Richard Bruce **KOWALL**, Plaintiff,

v.

**UNITED STATES of America,**
**Defendant.**

**Civ. A. No. 277.**

United States District Court,
W. D. Michigan, S. D.

May 21, 1971.

Richard Bruce Kowall, in pro. per.

John P. Milanowski, Grand Rapids, Mich., for defendant.

FOX, Chief Judge.

On October 21, 1970, petitioner, Richard Bruce Kowall, filed a motion to vacate a sentence under 50 App. U.S.C.A. § 462, imposed by this court on July 10, 1969. 28 U.S.C.A. § 2255. He alleged that his arrest, conviction and sentence for failure to report for induction, which arose out of his local board's declaration that petitioner was a delinquent, were invalid under Gutknecht v. United States, 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532 (1970).

On November 13, 1970, a hearing on petitioner's motion was held before the Honorable W. Wallace Kent, then Chief Judge of this court. The United States did not oppose the motion.

The court determined that Gutknecht controlled, and ordered that:

(1) Petitioner be released from custody.

(2) His sentence be vacated.

(3) His conviction be set aside.

(4) The indictment be quashed.

(5) "Petitioner's arrest record be expunged so that petitioner shall return to civilian life with his full complement of civil rights and no burden on him resulting from these events."

There was no appeal from the above order.

On December 24, 1970, the United States filed a motion for relief from the above order pursuant to Rule 60(b) (6) of the Federal Rules of Civil Procedure. The government's motion requests the court to:

" * * * delete from the Court's Order entered on the 13th day of November 1970 that provision directing the expunging of the arrest record which is contained in the paragraph numbered 5 of that Order, or in the alternative, to limit that part of the Order to the obliteration of such appropriate portions of the Court records as relate to the arrest, or for such other relief as the Court deems appropriate in this respect, on the grounds that the full import of paragraph 5 of the Order does not appear to be clear as to its scope and would appear to be contrary to the public interest."

The court requested briefs from the parties. Petitioner filed a memorandum in opposition to the government's motion on March 17, 1971. The United States filed its brief in support on May 3, 1971. Upon consideration of the arguments and authorities contained therein, the court concludes that the motion for relief from the order should be denied.

The government's position is twofold. First, it argues that a United States District Court has no power to order under 28 U.S.C.A. § 2255 the expunging of records which flow from an arrest by federal authorities, and which are in the possession and control of federal agencies. Second, the United States urges that the public interest in maintaining files of "criminal identification data" so far outweighs any infringement of the "so-called right of privacy" as to justify retention of arrest records where the individual involved is subsequently exonerated of any crime.

I. *The court's power.*[1]

■ The United States cites no authority in support of its contention that a federal court's remedial power does

---

1. The court will treat this aspect of the government's motion as based on Rule 60(b) (4).

not reach criminal identification records kept by federal authorities. It does recite various statutes and regulations authorizing and administering the collection and preservation of records by the Attorney General, the United States Marshals, and the Federal Bureau of Investigation. These provisions allegedly prescribe an area of exclusively executive discretion "not subject to judicial interdiction."

At issue here is not the authority of the above agencies to collect, maintain, and use criminal identification or arrest data. This they obviously are entitled to do by statute. 28 U.S.C.A. §§ 534, 569(c). Nor does this matter involve the particular methods by which these efforts are carried out. The question presented here is whether a court, where the facts of an individual § 2255 case convince it that justice so requires, can order that records of a given arrest be removed from this data. Absent express language prohibiting such judicial action, the statutory and regulatory bases for criminal intelligence activity by federal agencies are of no assistance with respect to this issue. The court does note in passing, however, that there is language in the United States Attorney's Manual, at Title 8, page 83, which impliedly recognizes a court's power to order return or destruction of criminal identification records.

The court believes that any challenge to the inherent power of a federal court to enter an order expunging arrest records is foreclosed by prior decision. In United States v. McLeod, 385 F.2d 734 (5th Cir. 1967); Hughes v. Rizzo, 282 F.Supp. 881 (E.D.Pa.1968), and Wheeler v. Goodman, 306 F.Supp. 58 (W.D.N.C.1969), federal courts ordered destruction of arrest records as part of relief granted under civil rights legislation. In these cases the orders were directed to state police agencies. Menard v. Mitchell, 139 U.S.App.D.C. 113, 430 F.2d 486 (1970), and United States v. Kalish, 271 F.Supp. 968 (D.P.R.1967), were original actions against the United States or its agents seeking relief similar to that granted in the present case. Both courts accepted, apparently without challenge, the power of the judiciary to reach federal criminal records. The case of Morrow v. District of Columbia, 135 U.S.App.D.C. 160, 417 F.2d 728 (1969), although it applies directly only to the jurisdiction of District of Columbia courts, contains a discussion of the basis of judicial authority in this area which is both persuasive and of general application.

Relying on the above cases, the court holds that in granting § 2255 relief, and in appropriate circumstances, it may order federal agencies to expunge arrest records.

In the last analysis, the logic of the natural law of remedies does not set arbitrary limits on a federal court's jurisdiction to right wrongs cognizable by the common law within the jurisdiction of the court. The jurisprudential justification for the ruling cited above and this court's holding in the instant case was best expressed by Mr. Justice Marshall in Marbury v. Madison, 5 U.S. (1 Cranch) 87, 102, 103, 2 L.Ed. 60:

2. This brings us to the second inquiry; which is: If he has a right, and that right has been violated, do the laws of his country afford him a remedy?

*163] *The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury. One of the first duties of government is to afford that protection. In Great Britain, the king himself is sued in the respectful form of a petition, and he never fails to comply with the judgment of his court.

In the 3d vol. of his Commentaries (p. 23), Blackstone states two cases in

which a remedy is afforded by mere operation of law. *"In all other cases,"* he says, *"it is a general and indisputable rule, that where there is a legal right, there is also a legal remedy by suit, or action at law, whenever that right is invaded."* And afterwards (p. 109, of the same vol.), he says *"I am next to consider such injuries as are cognisable by the courts of the common law. And herein I shall, for the present, only remark, that all possible injuries whatsoever, that did not fall within the exclusive cognisance of either the ecclesiastical, military or maritime tribunals, are, for that very reason, within the cognisance of the commonlaw courts of justice; for it is a settled and invariable principle in the laws of England, that every right, when withheld, must have a remedy, and every injury its proper redress."*

The government of the United States has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right. If this obloquy is to be cast on the jurisprudence of our country, it must arise from the peculiar character of the case. (Emphasis supplied.)

II. *The propriety of the present order.*

The government's second basis for requesting modification of the November 13th order is that, as a matter of sound public policy, such orders should not be granted.

 A reading of applicable cases indicates that there is no such general rule. In each case, the court must weigh the reasons advanced for and against expunging arrest records. If it is found after careful analysis that the public interest in retaining records of a specific arrest is clearly outweighed by the dangers of unwarranted adverse consequences to the individual, then the records involved may properly be expunged. The present motion by the United States is essentially a request to reopen this case, reapply the above standard, and produce a different result than that reached on November 13.

Upon examination of the facts and law contained in the pleadings and memoranda of the parties, the court concludes that such reconsideration and modification are not appropriate.

The November 13 order requires the United States and its agents, including the United States Attorney, the Justice Department, and federal investigative agencies, to remove from their files any notation of or reference to the arrest involved in this case. The purpose is not to interfere with the legitimate statistical or investigatory activity of these departments, but to grant full and fair relief to petitioner:[2]

 Information denominated a record of arrest, if it becomes known, may subject an individual to serious difficulties. Even if no direct economic loss is involved, the injury to an individual's reputation may be substantial.[16] Economic losses themselves

---

2. The government's request, if granted, would constitute an impermissible impingement of Kowall's inalienable human rights to which the government of the United States is instituted to secure "life, liberty and pursuit of happiness." It is of serious concern that each generation of Americans is compelled to rediscover the Declaration of Independence.

16. At common law, the accusation that an individual has been arrested for crime is actionable *per se.* Hanson v. Krehbiel, 68 Kan. 670, 75 P. 1041

The Declaration of Independence which was an act of the Continental Congress, has never been repealed, and, is valid and binding on all governments of the United States, federal and state, as a primary obligation. (President Lincoln's Gettysburg and Second Inaugural Addresses, Lincoln Memorial, Washington, D.C.)

(1904) ; Brewer v. Chase, 121 Mich. 526, 80 N.W. 575 (1899). And *see, e. g.,* N. Y. Times, July 17, 1966, at 54, col. 7, referring generally to persons whose fingerprints are sent to the FBI after arrest as "criminals."

may be both direct and serious. Opportunities for schooling, employment, or professional licenses may be restricted or nonexistent as a consequence of the mere fact of an arrest, even if followed by acquittal or complete exoneration of the charges involved.[17] An arrest record may be

17. A survey by the New York Civil Liberties Union indicated that 75% of New York area employment agencies would not accept for referral an applicant with an arrest record. Sparer, Employability and the Juvenile Arrest Record 5 (Center for the Study of Unemployed Youth, New York University) (pamphlet). Another survey of 75 employers indicated that 66 of them would not consider employing a man who had been arrested for assault and acquitted. Schwartz & Skolnik, Two Studies of Legal Stigma, 10 Social Prob. 133 (1962). At the very least, an arrest record is likely to lead to further investigation; and if it is convenient to fill the job before the investigation is complete, the applicant is effectively denied employment because of his record. *See* Hess & Le Poole, Abuse of the Record of Arrest Not Leading to Conviction, 13 Crime & Delinquency 494, 496 (1967).

used by the police in determining whether subsequently to arrest the individual concerned,[18] or whether to ex-

18. LaFave, *supra* note 10, at 287–289.

ercise their discretion to bring formal charges against an individual already arrested.[19] Arrest records have been

19. *Id.* at 141–142.

uesd in deciding whether to allow a defendant to present his story without impeachment by prior convictions,[20]

20. *Cf.* Suggs v. United States, 132 U.S. App.D.C. 337, 340, 407 F.2d 1272, 1275 (1969).

and as a basis for denying release prior to trial or an appeal;[21] or they may

21. Russell v. United States, 131 U.S. App.D.C. 44, 45, 402 F.2d 185, 186 (1968) ; Rhodes v. United States, 275 F.2d 78, 81–82 (4th Cir. 1960) (Sobeloff, C. J.).

be considered by a judge in determining the sentence to be given a convicted offender.[22]

22. *See, e. g.,* the sentencing transcript in United States v. Isaac, 299 F.Supp. 380 (D.D.C.1969).

Adverse action taken against an individual because of his arrest record is premised upon certain assumptions regarding the meaning of an arrest.[23] Insofar as these assump-

23. This may be so more often than we would like to think. The American Bar Association's Advisory Committee on Sentencing and Review strongly recommended the exclusion from presentence reports of any mention of charges not leading to conviction:

> Arrests, juvenile dispositions short of an adjudication, and the like, can be extremely misleading and damaging if presented to the court as part of a section of the report which deals with past convictions. If such items should be included at all—and the Advisory Committee would not provide for their inclusion—at the very least a detailed effort should be undertaken to assure that the reader of the report cannot possibly mistake an arrest for a conviction.

American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Probation § 2.3, at 37 (Tent. draft 1970).

tions differ from reality, the adverse actions will have an erroneous basis.[24]

24. Even if the assumptions are accurate, an arrest record may be used in ways that should be difficult if not impossible to tolerate. Presumably the fact of arrest indicates some possibility that the individual concerned engaged in the criminal activity with which he was charged. Investigation may disclose whether he has or not. Yet so long as there exists an employable pool of per-

sons who have not been arrested, employers will find it cheaper to make an arrest an automatic disqualification for employment. *See* Hess & Le Poole, *supra* note 17, at 496.

Menard v. Mitchell, 139 U.S.App.D.C. 113, 430 F.2d 486, at page 490 (1970).

The above factors will justify expunging a record where circumstances indicate such action is appropriate to accord full judicial relief, and where there is no apparent countervailing legitimate investigatory need for the data. A judge of this court ordered that any record of petitioner's arrest be expunged. He had the facts and the parties before him. There is no reason to now believe that justice requires modification of that order.

■ Rule 60(b) (6) authorizes relief from a standing order "upon such terms as are just" and for a "reason justifying relief." The burden is therefore upon the moving party to persuade the court that justice requires an exercise of remedial discretion in its behalf. Rule 60(b) procedure may not be used as a substitute for appeal or for a mere rehearing on issues already presented and adjudicated. Whiteleather v. United States, 264 F.2d 861 (6th Cir. 1959). The government here offers no reason why Rule 60(b) (6) should be used to accomplish a reconsideration of the merits of the above order. It offers no reason why the points raised herein could not have been raised either at the November 13 hearing or on appeal. It offers no reason why justice otherwise requires a Rule 60(b) (6) order. Under these circumstances, to reopen this matter for what amounts to a mere reconsideration of the litigants' previously existing situation would not be a proper use of Rule 60(b).

The motion of the United States is denied. The order questioned will remain as written.

It is so ordered.