**UNITED STATES of America**
v.
**Harry A. DOOLEY.**
**Crim. No. 71–686.**

United States District Court,
E. D. Pennsylvania.
Sept. 28, 1973.

---

Gregory Magarity, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Charles B. Burr, II, Obermayer, Rebbman, Maxwell & Hippel, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

The petitioner, Harry A. Dooley, was indicted by a Federal Grand Jury in the above captioned case on December 2, 1971, and charged with conspiracy to violate Title 18, United States Code, Section 1954. Petitioner was also indicted by the same Federal Grand Jury on December 2, 1971, in Criminal No. 71–685 and charged with the same crimes.

On or about December 10, 1971, petitioner voluntarily appeared in the office of the United States Marshal to sign his own bond in the amount of One Thousand ($1,000) Dollars, in connection with both of the aforementioned indictments. As a result of petitioner's voluntary appearance in the office of the United States Marshal he was photographed and fingerprinted by agents, servants, and/or representatives of said office.

On October 24, 1972, petitioner was brought to trial before this Court in the above captioned case, and on October 27, 1972, the jury returned a verdict of "Not Guilty" on all counts of the indictment. As a result of petitioner's acquittal in the above captioned case, the United States Attorney's Office filed a motion to dismiss the indictment in Criminal No. 71–685, which motion was granted by the Honorable Edward R. Becker on November 1, 1972.

Petitioner, Harry A. Dooley, now moves this Court to expunge the fingerprints, photographs (including the negatives and all copies, prints and reproductions of said photographs) and record of his arrest (hereinafter "arrest records") in connection with the above captioned case on the grounds that the continued maintenance and use of the petitioner's arrest records, including fingerprints and photographs (1) has caused him irreparable harm, and (2) constitutes an invasion of privacy. The petitioner further alleges that the government's interest in retaining the records involved is clearly outweighed by the dangers of unwarranted adverse consequences to the petitioner.

The government opposes the expungement on the basis that the Court does not have jurisdiction to entertain such a motion at this time because the criminal action has been terminated, or if the Court should conclude that it has jurisdiction, there is no basis for granting the motion because (1) no federal statute authorizes such expungement, (2) petitioner cites no authority to support an expungement in a situation where the arrests themselves were based on probable cause and therefore legal, and (3) the retention of arrest, fingerprint and photographic records in and of themselves does not constitute an invasion of privacy.

▮ This motion to expunge certain arrest records of the petitioner, Harry A. Dooley, presents this Court with a most important and troubling issue.[1]

---

1. The government has raised an interesting question by alleging that there is no case or controversy presently pending before the Court involving these two parties under the present Criminal No. 71–686 because the petitioner was tried and was acquitted by a jury. Put another way, the government contends that a Federal Court cannot entertain a motion in a case which, although it existed at one time, no longer exists today. The government contends that the matter should be raised by an appropiate civil action which would necessitate additional time and expense for both the government and petitioner, Harry A. Dooley. The new case would then be assigned to the same judge as a related matter, see Local

The core questions are whether and to what extent the petitioner's right of privacy has been and is being invaded by the retention of his arrest records in a case in which he has been acquitted of the charges made against him by a jury verdict and how this invasion, if any, should be balanced, if at all, against the government's legitimate interest in collecting and maintaining arrest records generally for purposes of effective criminal law enforcement.

Unresolved arrest records generally may well have significance for law enforcement purposes. They provide legitimate leads and questionable background information and may properly assist in resolving criminal actions. But charges resulting in acquittal clearly have no legitimate significance. Likewise, other charges which the government fails or refuses to press or which it withdraws are entitled to no greater legitimacy. They lose any tendency to show probable cause and should not be boot-strapped into any unearned and undeserved significance. Actually, a collection of dismissed, abandoned or withdrawn arrest records are no more than gutter rumors when measured against any standards of constitutional fairness to an individual and, along with records resulting in an acquittal are not entitled to any legitimate law enforcement credibility whatsoever.

Petitioner has not contended that these records have in fact been used outside the criminal law enforcement agencies authorized to maintain or receive such information although it is common knowledge that this information does from time to time find its way into the hands of unauthorized parties. Petitioner contends that the mere existence of his arrest records, in and of themselves, is an invasion of his right of privacy because of the great potential for harm these records now have should they leave the hands of the law enforcement agencies authorized to collect them. This Court is aware of the problems created by arrest records generally,[2] and we are especially concerned with the invasion of privacy of the individual where the information of arrest falls into the wrong hands.

Information denominated a record of arrest if it becomes known, may subject the individual to serious difficulties. Even if no direct economic loss is involved, the injury to an individual's reputation may be substantial [footnote omitted]. Economic losses themselves may be both direct and serious. Opportunities for schooling, employment, or professional licenses may be restricted or non-existent as a consequence of the mere fact of an arrest, even if followed by acquittal or complete exoneration of the charges involved [footnote omitted]. An arrest record may be used by the police in determining whether subsequently to arrest the individual concerned [footnote omitted] or whether to exercise their discretion to bring formal

Rules of Civil Procedure, U.S.D.C. for E.D. Pa. Rule 3(c)(3), and we would therefore be presented with the same question we are faced with now. We will therefore entertain defendant's motion to expunge based on the fact that the present motion is ancillary and directly connected to the Criminal Indictment which was before this Court on a prior occasion, as well as our belief that no good purpose would be served by requiring petitioner to institute a new civil suit involving exactly the same issue.

As to the government's assertion that this issue might not be appealable to a higher court if we grant petitioner's motion, the question is mooted by our decision in this case.

2. See President's Commission on Law Enforcement and the Administration of Justice, Task Force Report: Science and Technology 74–77 (1967). Dealing specifically with arrest records, the Commission noted three serious problems in their use:

The record may contain incomplete or incorrect information;

The information may fall into the wrong hands and be used to intimidate or embarrass;

The information may be retained long after it has lost its usefulness and serves only to harass ex-offenders, and its mere existence may diminish an offender's belief in the possibility of redemption.

charges against an individual already arrested [footnote omitted] . . . Adverse action taken against an individual because of his arrest record is premised upon certain assumptions regarding the meaning of an arrest [footnote omitted]. Insofar as these assumptions differ from reality, the adverse actions will have an erroneous basis [footnote omitted]. Kowall v. United States, 53 F.R.D. 211, 214 (W. D.Mich.1971).

We must also make note of the fact that these records cause injury to the reputation of the individual if allowed to fall into the wrong hands because there is usually no distinction of record regarding the subsequent disposition of the case. Also, few employers will take the time to research the disposition of a prior arrest, and it is likely that the individual who is prejudiced will not have the opportunity to explain the disposition thereof.

■ The difficulty in this case is that petitioner's arrest and subsequent fingerprinting and photographing were, we must assume, perfectly proper. Petitioner does not contend that the arrests were made without probable cause or for purposes of harassment. Petitioner is correct in his assertion that the Federal Court does have the power to enter an order expunging arrest records of individuals who are arrested without probable cause, or for purposes of harassment, see Hughes v. Rizzo, 282 F.Supp. 881 (E.D.Pa.1968), and in extraordinary circumstances where justice requires, see Kowall v. United States, 53 F.R.D. 211 (W.D.Mich.1971). However, we are unable to find any case which has permitted expungement in the typical case such as we have here, and it seems clear that the Federal Courts do not expunge arrest records in a normal case. See United States v. Rosen, 343 F.Supp. 804 (S. D.N.Y.1972).

Both sides recognize the obligation placed on the Attorney General through his duly appointed officials to

(1) Acquire, collect, classify and preserve identification, criminal identification, crime and other records; and

(2) Exchange these records with, and for the official use of, authorized officials of the Federal Government, the States, cities, and penal institutions.

(b) The exchange of records authorized by subsection (a)(2) of this section is subject to cancellation if dissemination is made outside the receiving departments or related agencies.

(c) . . . .

28 U.S.C. § 534.

Also, § 534(b) does afford some protection from unauthorized dissemination of arrest records of a federal arrestee although we all know that that protection is not always effective.

Even assuming that the adverse information never falls into "unauthorized" hands, the fact remains (1) that the information is valueless if its retention is based upon some theory of law enforcement assistance to the police at any level since it has been determined to be unfounded in law; (2) that it cannot form the basis for any legitimate law enforcement investigation; (3) that the use of this information by "authorized" agencies would place the subject person at a distinct disadvantage with other citizens; (4) that the use of the information would of necessity be prejudiced specifically to the rights of the subject person as compared with the rights enjoyed by all other citizens; (5) and that such an unfair state of affairs is devoid of fair play, a violation of the constitutional right of privacy as well as of the presumption of innocence and is an affront to our sense of justice.

Any citizen, even one with an absolutely clean lifetime record of not violating the law, through a series of circumstances could find himself charged with a violation of the law even though he may be entirely innocent of the charges. Our system of criminal justice will in due course bring out the truth and he will be cleared. But his record will not be cleared. And although he has been

cleared under our laws, at any future time the cloud of the prosecution against him will remain to all who one way or another gain access to it: be it inquiries concerning employment, security clearance, political office or investigations concerning other criminal offenses.

And whether or not the information is disclosed, the fear of the subject person that it will be or may be is always there.

But, alas, with a full recognition of the foregoing we are also aware that to expunge the records in this case would set the stage for expungement in all similar cases where a verdict of acquittal is rendered. We hesitate to do this through judicial action because of the practical administrative problems which a decision of this type could create for the government. We are of the opinion that the expungement of arrest records is a question which should be dealt with as a legislative matter by the Congress and not by this Court.

Therefore, we reluctantly decline to expunge petitioner's arrest records at this time for the reasons set forth above.