**UNITED STATES of America,**
**Plaintiff,**

v.

**James E. SEASHOLTZ, Defendant.**

**No. 72-CR-87.**

United States District Court,
N. D. Oklahoma,
Criminal Division.

March 28, 1974.

Nathan G. Graham, Tulsa, Okl., for plaintiff.

Lawrence A. McSoud, Tulsa, Okl., for defendant.

## ORDER

DAUGHERTY, Chief Judge.

Defendant moves to have this Court expunge his fingerprints, pictures and records everywhere such materials were produced or disseminated as a result of the above criminal case against him which was dismissed by the Court at the trial thereof. Defendant alleges that his reputation as a general surgeon is being damaged because he finds newspaper allegations in the files of the Retail Credit Bureau, Hooper Homes and American Service Bureau, without indicating that he was acquitted.

The issues are (1) whether and to what extent the Defendant's right of privacy has been and is being invaded by the retention of his arrest records in a case in which a Motion for Judgment of Acquittal was granted by the Court after the Government had presented its case, and (2) how this invasion, if any, should be balanced, if at all, against the Government's legitimate interest in collecting and maintaining arrest records generally for purposes of effective law enforcement.

28 U.S.C.A. § 534 provides:

"(a) The Attorney General shall—
(1) acquire, collect, classify, and preserve identification, criminal identification, crime, and other records; and

(2) exchange these records with, and for the official use of, authorized officials of the Federal Government, the States, cities, and penal and other institutions.

(b) The exchange of records authorized by subsection (a)(2) of this section is subject to cancellation if dissemination is made outside the receiving departments or related agencies.
(c) The Attorney General may appoint officials to perform the functions authorized by this section."

There is authority that Federal Courts have equity power to expunge arrest records of individuals in extraordinary or extreme circumstances such as illegal arrests or mass arrests or harassment where justice requires. See Kowall v. United States, 53 F.R.D. 211, (D.C.Mich.1971); United States v. McLeod, 385 F.2d 734 (Fifth Cir. 1967); Hughes v. Rizzo, 282 F.Supp. 881 (D.C. Pa.1968) and Wheeler v. Goodman, 306 F.Supp. 58 (D.C.N.C.1969) vacated on other grounds 401 U.S. 987, 91 S.Ct. 1219, 28 L.Ed.2d 524 (1971). But these cases teach that each case must be considered on its own facts and circumstances.

It seems clear, however, that Federal Courts do not expunge arrest records in a normal case unless directed by Statute or the arrest was unlawful. United States v. Rosen, 343 F.Supp. 804 (D.C.N.Y.1972). No Statute has been found which directs expunging. No claim is made by Defendant that he was illegally arrested. In the recent and well reasoned case of United States v.

Dooley, 364 F.Supp. 75 (D.C.Pa.1973) the Court stated that it hesitated to expunge records in an acquittal case because of the practical administrative problems and burden which a decision of this type could create for the Government. The Court further opined that the expunging of arrest records is a matter to be dealt with by Congress and not by the Court. The Court declined to expunge Defendant's arrest records. In Menard v. Mitchell, 328 F.Supp. 718 (D. C.D.C.1971) the Court refused to expunge arrest records if there had been probable cause for the arrest.

It is not a simple and easy matter to undo the Governmental criminal identification process which follows an arrest and the lodging of charges. This process is somewhat like the news media—once information is disseminated there is no way to guarantee a full retraction. There is no way to control what an individual or entity may do with a news story after it is released nor with criminal identification after it is disseminated. Not except at great expense would it be possible, if it is possible, to gather up everything that has taken place in this case just in the many federal offices involved and bring about its elimination. In any event, an order of this Court could not reach credit bureaus or the like or recall news stories. The Court must assume that official Government records will correctly reflect the final disposition of this case. And it must be recognized that there is a compelling public need for an effective and workable criminal identification procedure. Were this a simple and brief matter it might be practicable to undo the criminal identification process as it would have pertained to the Plaintiff as a result of this case. But with this case spanning a considerable period of time and involving many federal offices and proceeding as far as a jury trial and after considering all the circumstances of this case, the Court in its judgment and discretion declines to grant the relief requested by the Defendant.