·Adolph HAMMONS, Jr., Plaintiff,

v.

Donald F. SCOTT, Chief of Police, City and County of San Francisco, State of California, et al., Defendants.

No. C–75–0846 WHO.

United States District Court, N. D. California.

Aug. 10, 1976.

See also, D.C., 423 F.Supp. 618.

Thomas W. Pulliam, Jr., San Francisco Neighborhood Legal Assistance Foundation, San Francisco, Cal., for plaintiff.

James R. Browning, Jr., U. S. Atty., George Christopher Stoll, Asst. U. S. Atty., San Francisco, Cal., for Federal defendants.

Thomas M. O'Connor, City Atty., John A. Etchevers, Deputy City Atty., San Francisco, Cal., for Donald F. Scott.

Kenneth C. Young, Deputy Atty. Gen., San Francisco, Cal., for State defendant.

## OPINION AND ORDER

ORRICK, District Judge.

Plaintiff, Adolph Hammons, Jr., a black resident of San Francisco, California, was arrested by the San Francisco Police Department on March 5, 1974, after a neighbor complained he had fired a gun at her. He was taken to the San Francisco City Jail, booked on a charge of assault with a deadly weapon, fingerprinted, and incarcerated for one day. Plaintiff was released from custody the next day, and all criminal charges arising from this incident were subsequently dropped. However, a record of plaintiff's arrest was preserved by the San Francisco Police Department and was forwarded to the Bureau of Identification and Investigation of the Department of Justice of the State of California and to the Federal Bureau of Investigation (FBI). These agencies maintain a record of plaintiff's arrest.

In this action plaintiff has launched a broadside attack on the maintenance, use, and dissemination of arrest records of persons never convicted of a criminal charge based upon the conduct for which they were arrested.[1] Plaintiff has named as defendants in this action state and local officials as well as the Attorney General of the United States, who is responsible under federal law for the collection and dissemination of arrest records, and the Director of the FBI to whom the federal criminal record-keeping tasks have been delegated. See, 28 U.S.C. § 534; 28 C.F.R. §§ .85, 20.1 et seq. Plaintiff contends that the maintenance and dissemination of arrest records by the defendants is unconstitutional where the person arrested was never convicted of, nor pleaded guilty or nolo contendere to, any crime arising from the conduct for which such arrest was made and where criminal proceedings against that person arising from such conduct have been terminated. Plaintiff asserts that the maintenance and dissemination of such records violate constitutional guarantees of due process and a constitutional right to privacy. Plaintiff further contends that the practices challenged herein violate the constitutional prohibition against racial discrimination. He seeks declaratory and injunctive relief, including an order requiring the expungement of all such arrest records.

Plaintiff's challenge to the state and local practices governing the maintenance and dissemination of arrest records was addressed by a three-judge court. 28 U.S.C. §§ 2281–2284. The remaining issues in the case, involving the federal defendants, were retained for consideration by this Court sitting as a single judge. C. Wright, Handbook of the Law of Federal Courts 191 (2d ed. 1970).

Spurred on by the recent pronouncements of the Supreme Court in Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the federal defendants now move this Court to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P.

---

1. The term "arrest records" refers to criminal history record information collected, preserved, and disseminated by criminal justice agencies for the purpose of identifying criminal offenders and alleged offenders, consisting of identifiable descriptions and notations of arrests, detentions, the nature and disposition of criminal charges, sentencing, confinement, and release. See, 42 U.S.C. § 3781(o); 28 C.F.R. § 20.3(b); see also, Cal.Penal Code § 11120.

The term "arrest records" also includes the FBI identification records, also known as "rap sheets", consisting of a listing of fingerprints submitted to and retained by the FBI in connection with arrests and certain other circumstances.

"The identification records includes the name of the agency or institution which submitted the fingerprints to the FBI. If the fingerprints submitted to the FBI concern a criminal offense, the identification record includes the date arrested or received, arrest charge information and disposition data concerning the arrest if known to the FBI. All such data included in an identification record are obtained from the contributing local, State and Federal agencies." 28 C.F.R. § 16.31.

12(b)(6). Because the Court in *Paul v. Davis* has so severely undercut the bases of plaintiff's constitutional arguments, this Court now feels compelled to grant the federal defendants' motion to dismiss.

The issue of what, if any, restraints should be imposed upon the practices of public agencies regarding the maintenance and dissemination of arrest records of persons who were never convicted of the crime for which they were arrested has concerned numerous courts. *See, e. g., Utz v. Cullinane,* 172 U.S.App.D.C. 67, 520 F.2d 467 (1975); *Tarlton v. Saxbe,* 165 U.S.App.D.C. 293, 507 F.2d 1116 (1974); *Menard v. Saxbe,* 162 U.S.App.D.C. 284, 498 F.2d 1017 (1974); *Menard v. Mitchell,* 139 U.S.App.D.C. 113, 430 F.2d 486 (1970); *United States v. Dooley,* 364 F.Supp. 75 (E.D.Pa.1973); *United States v. Kalish,* 271 F.Supp. 968 (D.P.R. 1967); *see also, Davidson v. Dill,* 180 Colo. 123, 503 P.2d 157 (1972); *Eddy v. Moore,* 5 Wash.App. 334, 487 P.2d 211 (1971).

However, the Supreme Court in *Paul v. Davis, supra,* seems to have cut short the full development of the nascent doctrines seeking some accommodation between values of individual privacy and the record-keeping responsibilities of the executive branch. *Paul* involved a challenge to the practice of the Chief of Police of Louisville, Kentucky, and other local officials of distributing flyers containing the names and photographs of persons suspected of being shoplifters. The flyers, consisting of five pages of "mug shot" photographs, proclaimed that those depicted were "Active Shoplifters". Included in the flyer was the name and "mug shot" of respondent, Davis, who had never been convicted of any criminal activity and whose only "offense" was having once been arrested on a shoplifting charge. Shortly after the circulation of the flyer, the charges against Davis were dismissed.

The Supreme Court held that the distribution of the flyer involved no infringement of Davis' constitutionally protected rights. *Paul v. Davis, supra,* 424 U.S. at 705–707, 96 S.Ct. 1155. The Court ruled that the claimed injuries to Davis' reputation invaded neither a "liberty" nor "property" interest protected by the Due Process Clause of the Fourteenth Amendment. *Paul v. Davis, supra,* at 711–714, 96 S.Ct. 1155. The Court similarly dismissed the claim that defendants' actions infringed upon a constitutional right to privacy. *Paul v. Davis, supra,* at 711–714, 96 S.Ct. 1155.

With the holding of *Paul v. Davis, supra,* in mind, the Court turns to a brief examination of the federal record-keeping practices challenged by plaintiff.

The primary statutory authority for federal criminal record-keeping activity is 28 U.S.C. § 534.[2] *See also,* 42 U.S.C. §§ 3761, 3763, 3769, 3771 and 3781. Section 534 authorizes the Attorney General, among other things, to "acquire, collect, classify, and preserve identification, criminal identification,

---

2. This statute reads:

"(a) The Attorney General shall—
(1) acquire, collect, classify, and preserve identification, criminal identification, crime, and other records; and
(2) exchange these records with, and for the official use of, authorized officials of the Federal Government, the States, cities, and penal and other institutions.
(b) The exchange of records authorized by subsection (a)(2) of this section is subject to cancellation if dissemination is made outside the receiving departments or related agencies.
(c) The Attorney General may appoint officials to perform the functions authorized by this section."
An implementing federal regulation, 28 C.F.R. § 0.85 provides:

"Subject to the general supervision of the Attorney General, and under the direction of the Deputy Attorney General, the Director of the Federal Bureau of Investigation shall:

\*    \*    \*    \*    \*    \*

(b) Conduct the acquisition, collection, exchange, classification, and preservation of identification records, including personal fingerprints voluntarily submitted, on a mutually beneficial basis, from law enforcement and other governmental agencies, railroad police, national banks, member banks of the Federal Reserve System, FDIC–Reserve–Insured Banks, and banking institutions insured by the Federal Savings and Loan Insurance Corporation \*    \*    \*."

crime, and other records". These record-keeping tasks have been delegated to the Director of the FBI. 28 C.F.R. § 0.85(b).

The details of the FBI criminal record-keeping system have been fully described in previous cases and need little elaboration here. *See, e. g., Menard v. Saxbe, supra,* 498 F.2d at 1020–1022. Briefly stated, the FBI Identification Division serves as a national repository for criminal history record information, including fingerprints and arrest records, submitted to it by more than 7,000 federal, state, and local agencies. The system is a mutual one wherein contributing agencies voluntarily submit information and in turn are entitled to receive information upon request for authorized purposes, including law enforcement related matters and employment screening.[3] The FBI presently maintains arrest records pertaining to more than 20,000,000 individuals.

The FBI receives in excess of 11,000 arrest fingerprint cards each workday from its contributors. When such a card is received, the FBI checks its records and reports back to the contributing agency that no prior arrest record was located or provides the contributor with a criminal history record or "rap sheet" on the arrested individual. Rap sheets are also disseminated to authorized agencies, including officers of the court and probationary authorities, upon request. Recent court decisions have imposed upon the FBI a duty to prevent the dissemination of inaccurate arrest and conviction records and to take reasonable steps to prevent inaccuracies. *Tarlton v. Saxbe, supra; on remand, Tarlton v. Saxbe,* 407 F.Supp. 1083 (D.D.C., 1976).

The arrest records maintained by the FBI are utilized for law enforcement related purposes—including utilization as a source of information, to some degree, in identifying persons suspected of having committed crimes, in determining persons to be placed under surveillance, and in determining which persons to interview in criminal investigations.

The arrest records are also used and disseminated for employment and licensing purposes, both within the federal government, by other governmental entities, including state and local governments, and certain private employers. Indeed, arrest records contained within the FBI's Computerized Criminal History File are disseminated upon request to over 14,500 public and private agencies, including the United States Civil Service Commission, the Armed Services, banks, and state and local governments, for use in making determinations regarding employment. *See, Utz v. Cullinane, supra,* 520 F.2d at 471.

As noted, plaintiff attacks the maintenance and dissemination of arrest records for persons who were never adjudged guilty of a criminal charge arising from the conduct for which they were arrested. However, the Court finds that the due process and right to privacy theories underlying plaintiff's claims are so similar to those recently rejected by the Supreme Court in *Paul* that these claims must fall as against the federal defendants. Although the facts in *Paul* are distinguishable from the case at bar, plaintiff's efforts to escape the controlling force of *Paul* are unavailing. If the Supreme Court failed to recognize a constitutional claim in the aggravated circumstances present in *Paul,* this Court cannot see how the same constitutional rights could be implicated by the practices challenged herein. The Court notes in this regard that the *Paul* decision was expressly made applicable to claims against federal officials as well as against those acting under color of state law. *Paul v. Davis, supra,* 424 U.S. at 701–704, n. 3, 96 S.Ct. 1155.

Finally, plaintiff alleges that the maintenance, use, and dissemination of his arrest record and the records of other black persons similarly situated constitutes unconsti-

---

**3.** The FBI collects and preserves arrest records and disseminates them to law enforcement and other governmental agencies, railroad police, national banks, member banks of the Federal Reserve System, FDIC–Reserve–Insured Banks, and banking institutions insured by the Federal Savings and Loan Insurance Corporation and to state and local governments for purposes of employment and licensing. 28 C.F.R. §§ 0.85(b), (j), 20.33 and 50.12.

tutional racial discrimination because the harm caused by such maintenance, use, and dissemination falls disproportionately upon black persons. In support of this claim, plaintiff asks the Court to take judicial notice of the fact that blacks are arrested significantly more frequently than whites in proportion to their numbers in the general population. *See, Gregory v. Litton Systems, Inc.,* 316 F.Supp. 401, 403 (C.D.Cal. 1970), *modified on other grounds and aff'd,* 472 F.2d 631 (9th Cir. 1972); *Utz v. Cullinane, supra,* 520 F.2d at 482; *see also, Green v. Missouri Pacific Railroad Co.,* 523 F.2d 1290 (8th Cir. 1975); *Morrow v. District of Columbia,* 135 U.S.App.D.C. 160, 417 F.2d 728, 742 (1969).

In *Gregory,* the court held that the defendants had violated Title VII (42 U.S.C. § 2000e *et seq.*) by utilizing a policy of excluding from employment persons who have suffered a number of arrests without any conviction. The court reasoned that this policy was unlawful because it had the foreseeable effect of denying black applicants an equal opportunity for employment. The decision was based on the premise that information concerning a prospective employee's record of arrests without convictions is irrelevant to his suitability or qualification for employment. Also underlying the opinion is the presumption that employers will often draw a derogatory inference merely from the fact of an arrest. *See, Utz v. Cullinane, supra,* 520 F.2d at 480–481.

■ However, as the court in *Gregory* noted, a violation of Title VII does not depend upon a showing of an intent to discriminate. *Gregory v. Litton Systems, Inc., supra,* 316 F.Supp. at 403; *see also, Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976).

■ To establish a violation of constitutional rights rather than statutory protections in regard to racial discrimination, it is necessary to allege some purposeful and intentional discrimination. *Washington v. Davis, supra; see also, Snowden v. Hughes,* 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1943); *Yick Wo v. Hopkins,* 118 U.S. 356, 373–374, 6 S.Ct. 1064, 30 L.Ed. 220 (1886).

No such allegation is contained in plaintiff's complaint. On the contrary, plaintiff bases his claim upon the alleged discriminatory effect of the maintenance and dissemination of arrest records. Despite the suggestion in *Utz v. Cullinane, supra,* that it would probably infringe upon constitutional rights for the government to disseminate arrest records for employment and hiring purposes, *Utz v. Cullinane, supra,* 520 F.2d at 481, 482 n. 40, the Court believes that the complaint here is defective for failing to allege purposeful and intentional discrimination through the acts complained of.

The dissemination of arrest records of black persons by the FBI to other governmental agencies and private parties for employment and licensing purposes might, indeed, violate Title VII. As Judge Skelly Wright noted in *Utz:*

"If it is illegal for employers (including state and local government employers who are within the ambit of Title VII) to utilize arrest records not culminating in convictions to deny an individual opportunities open to those with no such records, it would appear to be just as illegal for the government to furnish the employer with the information on which such illegal actions may be based, at least when there is no legitimate law enforcement justification for providing the employer with the data." *Utz v. Cullinane, supra,* 520 F.2d at 482.

However, the proof of this matter cannot be decided by taking judicial notice of the types of facts which plaintiff suggests here. Thus, if plaintiff seeks to amend the complaint and pursue this cause of action, an adequate factual record would have to be developed. Such matters are not now before the Court. Therefore, the Court finds that the claim based on the allegedly discriminatory effect of the maintenance and dissemination of arrest records must be dismissed.

Accordingly, IT IS HEREBY ORDERED that the federal defendants' motion to dismiss the complaint in its entirety is granted, and the action is dismissed without prejudice against the federal defendants.