Eric John NATWIG

v.

**William H. WEBSTER, in his capacity as Director of the Federal Bureau of Investigation.**

Civ. A. No. 82–0351 P.

United States District Court, D. Rhode Island.

April 5, 1983.

---

R. Daniel Prentiss, Providence, R.I., for plaintiff.

William French Smith, U.S. Atty. Gen., U.S. Dept. of Justice, Washington, D.C., Everett C. Sammartino, Asst. U.S. Atty., Providence, R.I., for defendant.

## OPINION AND ORDER

PETTINE, Senior District Judge.

In this action the plaintiff, Eric John Natwig, seeks an injunction requiring the defendant to expunge from the files of the Federal Bureau of Investigation records relating to his arrest on January 19, 1968. Both the plaintiff and the defendant have moved for summary judgment. The facts of this case are not in dispute and are stated fully in the plaintiff's uncontested affidavit filed in support of his motion for summary judgment.

On January 6, 1968, the plaintiff, a student attending Brown University, attempted to purchase several cans of beer at a liquor store in Westerly, Rhode Island. Although the plaintiff was 21 and legally entitled to purchase alcohol, the liquor store owner refused to make the sale. Several days after this incident the plaintiff sent an insulting letter to the liquor store owner. On the basis of the contents of this letter he was arrested and charged with extortion. On March 8, 1968 the Grand Jury returned a "no true bill" on the extortion charge. The record of the plaintiff's arrest, however, became part of his permanent FBI file.

The plaintiff is currently an economist who works as a consultant to private firms and state and federal government agencies. He seeks the expunction of his arrest record because it has in the past and will in the future create a false and misleading impression of him, cause him to suffer disrespect and stymie his potential for employment. In his affidavit supporting his motion for summary judgment, he states that he is aware of at least one government agency by whom he was employed that discovered his arrest record through a security check. He also states that he fears that other prospective employers will discover his arrest record and that this will influence their decisions as to whether to use his services. Specifically, the plaintiff states that he is considering emigrating to Australia to work in the field of resource development, but has not pursued this opportunity because he fears that the presence of his arrest record could cause the Australian government to refuse to issue the required visas and permits.

The plaintiff seeks two forms of relief. First, he requests that this Court exercise its equitable power to expunge his arrest record and enjoin the defendant from disseminating it to any person.[1] Second, the

---

1. The plaintiff contends that the dissemination of his arrest violates his right to privacy as guaranteed by the First, Fourth and Fifth Amendments to the United States Constitution. Since the Court finds that it can grant the plaintiff the relief he seeks through the exercise

of its equitable powers, it need not reach his constitutional claim. Nevertheless, the Court believes that the issue of whether the dissemination of an arrest record may in certain circumstances violate an individual's constitutional right to privacy is not, as the Government

plaintiff requests that this Court exercise its authority under 28 U.S.C. § 2201 to declare that he may answer in the negative any inquiry regarding whether he has ever been arrested.

### I.

The Attorney General of the United States is required by 28 U.S.C. § 534(a) (1970) to acquire, retain and disseminate criminal records. The regulation governing this statute further provides that criminal records will be made available "for use in connection with licensing or local/state employment or for other uses only if dissemination is authorized by Federal or state statutes and approved by the Attorney General of the United States." 28 C.F.R. § 20.33 (1982). It is thus undisputed that the government has authority not only to maintain the plaintiff's arrest record, but to disseminate it in certain limited instances.

■ Despite this statutory scheme, however, courts have recognized that they possess inherent power to order the expunction of arrest records. *See Doe v. Webster,* 606 F.2d 1226, 1230 n. 8 (D.C.Cir.1979); *Sullivan v. Murphy,* 478 F.2d 938, 968–69 (D.C.Cir.), cert. denied, 414 U.S. 880, 94 S.Ct. 162, 38 L.Ed.2d 125 (1973); *United States v. Benlizar,* 459 F.Supp. 614, 622–23 (D.D.C.1978); *Kowall v. United States,* 53 F.R.D. 211,

suggests, definitively resolved by *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). *See also Rowlett v. Fairfax,* 446 F.Supp. 186 (W.D.Mo.1978); *Hammons v. Scott,* 423 F.Supp. 625 (N.D.Cal.1976).

In *Paul* the Supreme Court rejected a plaintiff's claim to constitutional protection against the disclosure of the fact of his arrest on a shoplifting charge. At the time of the disclosure, the plaintiff's guilt or innocence of that offense had not been resolved. *Paul v. Davis,* 424 U.S. at 696, 96 S.Ct. at 1158. In rejecting his privacy claim, the Court noted that it "is based, not upon any challenge to the State's ability to restrict his freedom of action in a sphere contended to be 'private', but instead on a claim that the State may not publicize a record of an official act such as an arrest." *Id.* at 713, 96 S.Ct. at 1166. In dissent, Justice Brennan stated that he was concerned that the Court's decision would undermine "cases holding that there are substantive limits on the power of the government to disseminate unresolved arrest records outside the law enforcement system." *Id.* at 735 n. 18, 96 S.Ct. at 1177 n. 18. It is not clear to this Court that *Paul* signals the deathknell to challenges to the dissemination of arrest records based on the constitutional right to privacy. In *Whalen v. Roe,* 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), the Court recognized that the right to collect and use data for public purposes may be accompanied by a duty to avoid unwarranted disclosures which is based on an individual's constitutional right to privacy. *Id.* at 605, 97 S.Ct. at 879. *See also id.* at 606, 97 S.Ct. at 879 (Brennan, J., concurring); *Nixon v. Administrator of General Services,* 433 U.S. 425, 426–28, 97 S.Ct. 2777, 2781–83, 53 L.Ed.2d 867 (1977). It acknowledged that "the cases sometimes characterized as protecting 'privacy' have in fact involved at least two different kinds of interests. One is the individual interest in avoiding disclosure of personal matters, and another is the interest in

independence in making certain kinds of important decisions." *Supra* at 598–600, 97 S.Ct. at 876.

Since *Whalen* courts have disagreed as to the circumstances under which an individual's "interest in avoiding disclosure of personal matters" warrants constitutional protection. *Compare J.P. DeSanti,* 653 F.2d 1080, 1088 (6th Cir.1981) *with Fadjo v. Coon,* 633 F.2d 1172, 1175–76 (5th Cir.1981); *United States v. Westinghouse,* 638 F.2d 570, 577–80 (3d Cir.1980). Although not citing *Whalen, Doe v. Webster,* 606 F.2d 1226 (D.C.Cir.1979), recognized that "[t]he right of privacy ... should encompass a substantial measure of freedom for the individual to choose the extent to which the government could divulge criminal information about him, at least where no conviction has ensued and no countervailing government interest is demonstrated." *Id.* at 1238 n. 49 (*quoting Utz v. Cullinane,* 520 F.2d 467, 482 n. 41 (D.C.Cir. 1975)).

Extending the right of privacy as suggested in *Doe* is not necessarily inconsistent with *Paul v. Davis, supra. Paul* stated only that the right to privacy does not extend to the dissemination of an official act such as an arrest. This does not mean that the right does not exist in cases where the arrest itself is challenged as defective or without probable cause. In such circumstances the information contained in an arrest record may properly be characterized as falling within an individual's "interest in avoiding the disclosure of personal matters." The information contained in an arrest record of an individual who was unlawfully arrested or who was never prosecuted because of the absence of probable cause is not official information. It is difficult to understand how the Government could claim that such information serves any official function when the information was unconstitutionally gathered or concerns an individual who has been determined to be in no way implicated in the commission of a crime.

213–14 (W.D.Mich.1971). A court's power to remedy legal wrongs is premised on "the natural law of remedies" which "does not set arbitrary limits on a federal court's jurisdiction to right wrongs cognizable by common law within the jurisdiction of the court." *United States v. Benlizar,* 459 F.Supp. at 623 (*quoting Kowall v. United States,* 53 F.R.D. at 213). Nevertheless, a court's remedial power is not unlimited; there must be a logical relationship between the injury and the requested remedy. *Doe v. Webster,* 606 F.2d at 1231; *United States v. Benlizar,* 459 F.Supp. at 624; *see United States v. McLeod,* 385 F.2d 734, 749–50 (5th Cir.1976); *Bilick v. Dudley,* 356 F.Supp. 945, 952 (S.D.N.Y.1973).

Courts have consistently ordered expungement of arrest records in cases in which individuals are arrested without probable cause, *see Sullivan v. Murphy, supra; Urban v. Breier,* 401 F.Supp. 706 (E.D. Wisc.1975); *Washington Mobilization Committee v. Cullinane,* 400 F.Supp. 186, 218–19 (D.D.C.1975), *aff'd in part, rev'd in part,* 566 F.2d 107 (D.C.Cir.1977), or for the purposes of harassment. *See Tatum v. Morton,* 562 F.2d 1279 (D.C.Cir.1977); *United States v. McLeod, supra; Bilick v. Dudley, supra; Hughes v. Rizzo,* 282 F.Supp. 881 (E.D.Pa. 1968). Similarly it has been held that expunction is appropriate when the arrest is defective for some other reason, such as when an individual is arrested as a result of entrapment, *United States v. Benlizar,* 459 F.Supp. at 625, or is arrested based on a statute subsequently declared unconstitutional. *Kowall v. United States, supra.* Expunction is considered appropriate in these cases because it "is the remedy which will, to the maximum extent possible, eliminate the effects of illegal arrests." *Bilick v. Dudley,* 356 F.Supp. at 952. *See also United States v. McLeod,* 385 F.2d at 750.

The scope of a court's power to order expunction is less clearly defined in cases that involve constitutionally valid arrests that do not result in conviction. While it is generally acknowledged that courts do possess the power to expunge an arrest record of a person who has been acquitted, it would appear that an acquittal, standing alone, is not sufficient to warrant an expunction of an arrest record. *United States v. Linn,* 513 F.2d 925, 927–28 (10th Cir.), *cert. denied,* 423 U.S. 836, 96 S.Ct. 63, 46 L.Ed.2d 55 (1975); *United States v. Singleton,* 442 F.Supp. 722, 723 (S.D.Tex.1977); *United States v. Seasholtz,* 376 F.Supp. 1288, 1290 (N.D.Okl.1974); *United States v. Dooley,* 364 F.Supp. 75, 78–79 (E.D.Pa. 1973). "[T]he power to expunge an arrest record is a narrow one, and should not be routinely used whenever a criminal prosecution ends in an acquittal, but should be reserved for the unusual or extreme case." *United States v. Linn,* 513 F.2d at 927.

In deciding what constitutes "the unusual or extreme case" justifying expunction courts have balanced the government's need for the arrest record against the harm to the person arrested that results from maintaining the records. *Doe v. Webster,* 606 F.2d at 1231; *United States v. Schnitzer,* 567 F.2d 536, 539 (2d Cir.1979), *cert. denied,* 435 U.S. 907, 98 S.Ct. 1456, 55 L.Ed.2d 499 (1978); *Paton v. LaPrade,* 524 F.2d 862, 868 (3d Cir.1975). There appears to be no definitive all purpose rule governing this determination and to a considerable degree each case must stand on its own two feet. *United States v. Linn,* 513 F.2d at 927; *see Diamond v. United States,* 649 F.2d 496, 497 (7th Cir.1981).

## II.

■ The Court is convinced that it is appropriate to expunge the arrest record of the plaintiff in this case. He has suffered harm and it cannot be doubted that considerable more harm will result from maintaining his arrest records. The plaintiff's affidavit, which is not contested by the Government, indicates that his arrest record already has been released to one employer and the plaintiff fears that the further release of his record will jeopardize his plans to emigrate to Australia to pursue his work as an economist. The harms stemming from the release of arrest records are not imaginary. It is well recognized that:

Information denominated a record of arrest, if it becomes known, may subject an individual to serious difficulties. Even if no direct economic loss is involved, the injury to an individual's reputation may be substantial. Economic losses themselves may be both direct and serious. Opportunities for schooling, employment or professional licenses may be restricted or nonexistent as a consequence of the mere fact of an arrest, even if followed by acquittal or complete exoneration of the charges involved. An arrest record may be used by the police in determining whether subsequently to arrest the individual concerned, or whether to exercise discretion to bring formal charges against an individual already arrested. Arrest records have been used in deciding whether to allow a defendant to present his story without impeachment by prior convictions, and as a basis of denying release prior to trial or an appeal; or they may be considered by a judge in determining the sentence to be given a convicted offender.

*Menard v. Mitchell,* 430 F.2d 486, 490–91 (D.C.Cir.1970).

*See also United States v. Schnitzer,* 567 F.2d at 539; *United States v. Benlizar,* 459 F.Supp. at 620–21; *Kowall v. United States,* 53 F.R.D. at 214–15.

The Government's interest in maintaining the plaintiff's arrest record does not outweigh these harms. The Government asserts that arrest records are vital to effective law enforcement and that they should be retained even where, as here, there was no unlawful arrest, illegal seizure, or misuse of the records. Dissemination of the plaintiff's record in connection with state or local employment, the Government argues, does not constitute misuse of his record as it is allowed under 28 C.F.R. § 20.33 when authorized by a federal or state statute and approved by the United States Attorney General.

Several courts have recognized the importance of arrest records to effective law enforcement. *See United States v. Schnitzer,* 567 F.2d at 540 n. 6; *Hammons v. Scott,* 423

F.Supp. 625, 627–28 (N.D.Cal.1976); *United States v. Rosen,* 343 F.Supp. 804, 809 (S.D.N.Y.1972). In *Rosen* the Court explained:

> To permit law enforcement officials to retain arrest records, photographs or fingerprints promotes more effective law enforcement. Allowing the police broad discretion in retaining arrest records enables them to utilize more efficiently their facilities for combatting crime. Moreover, arrest records may be vital in curbing the growth of crime. (citations omitted).

*Id.* at 809.

Even where the harm to an individual may be greater than the government's need for his arrest record, the general need for a system of records may be a sufficient reason to deny expunction. *United States v. Schnitzer,* 567 F.2d at 540 n. 6. *See United States v. Seasholtz,* 376 F.Supp. at 1290; *United States v. Dooley,* 364 F.Supp. at 79.

The significance of arrest records to law enforcement is affected by the status of a case at the time the record is relied on by law enforcement officials. Courts have taken various views as to when arrest records are sufficiently probative of guilt that they may be a useful law enforcement tool. It is generally acknowledged that unresolved arrest records "provide legitimate leads and questionable background information and may properly assist in resolving criminal actions." *Utz v. Cullinane,* 520 F.2d 467, 479 (D.C.Cir.1975) (*quoting United States v. Dooley,* 364 F.Supp. at 77). Courts disagree, however, as to the relevance of an indictment that is dismissed or of an acquittal. In *Rosen* the Court noted that when a case is dismissed "[t]he merits of the indictment were not adjudicated and hence it does not mean that the defendant is innocent of those charges." *United States v. Rosen,* 343 F.Supp. at 806. In *Linn* the Court suggested that an acquittal does not necessarily mean that an arrest record is without value when the arrest was lawfully made based on a grand jury indictment and the trial judge found there was sufficient incriminating evidence to send the case to the jury. *United States v. Linn,*

513 F.2d at 928. Other courts, however, have observed that "a collection of dismissed, abandoned or withdrawn arrest records are no more than gutter rumors when measured against any standard of constitutional fairness to an individual and, along with records resulting in an acquittal are not entitled to any legitimate law enforcement credibility whatsoever." *Utz v. Cullinane,* 520 F.2d at 479 (*quoting United States v. Dooley,* 364 F.2d at 77).

Unlike cases in which an indictment is dismissed or results in acquittal, the grand jury in this case refused to return a true bill. The significance of a no true bill must be understood in terms of the function of the grand jury. It is well established that the Fifth Amendment guarantee that no civilian shall be tried "unless on a presentment or indictment of a Grand Jury . . ., presupposes an investigative body 'acting independently of either prosecuting attorney or judge,' *Stirone v. United States,* 361 U.S. 212, 218 [80 S.Ct. 270, 273, 4 L.Ed.2d 252] . . ., whose mission is to clear the innocent, no less than to bring to trial those who may be guilty." *United States v. Dionisio,* 410 U.S. 1, 16–17, 93 S.Ct. 764, 772–773, 35 L.Ed.2d 67 (1973). It is the grand jury's historic function to "declare, upon careful deliberation, under the solemnity of an oath, that there is good reason for" an individual's "accusation and trial." *Ex parte Bain,* 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed.

849 (1887). In other words, the grand jury is charged with determining whether there is probable cause to believe that a crime has been committed. *United States v. Gardner,* 516 F.2d 334, 338–39 (7th Cir.), *cert. denied,* 423 U.S. 861, 96 S.Ct. 118, 46 L.Ed.2d 89 (1975); *Martinez v. Winner,* 548 F.Supp. 278, 319 (D.Col.1982); *United States v. Dorfman,* 532 F.Supp. 1118, 1131 (N.D.Ill. 1981).[2]

The refusal of the grand jury to indict has been considered relevant to the expunction issue, *see United States v. Schnitzer,* 567 F.2d at 540; *United States v. Linn,* 513 F.2d at 928, and the Court is convinced that it would be a rare case in which expunction is not justified in the absence of a true bill. In this Court's view there is usually no legitimate law enforcement purpose that justifies retaining the arrest record of an individual the grand jury has refused to indict. *See Doe v. Webster,* 606 F.2d at 1231 n. 15. The government interest in such cases does not even compare to its interest in cases where an individual has been acquitted. An acquittal means only that a jury has found that the Government has not proven its case beyond a reasonable doubt. A no true bill, on the other hand, usually means that there is not even probable cause to believe that an individual is in any way involved with the commission of a crime.[3] While the absence of probable cause in itself suggests the lack of any

---

**2.** The grand jury is not bound to indict in every case where a conviction can be obtained. *United States v. Ciambrone,* 601 F.2d 616, 629 (2d Cir.1979) (Friendly, J., dissenting); *Charge of John Raymond Fletcher, Associate Judge, to a Grand Jury,* 18 F.R.D. 211, 214 Cir.Ct.Md.1955). As Judge Wisdom has written:

> By refusing to indict, the grand jury has the unchallengeable power to defend the innocent from government oppression by unjust prosecution. And it has the equally unchallengeable power to shield the guilty, should the whims of the jurors or their conscious or subconscious response to community pressures induce twelve or more jurors to give sanctuary to the guilty.

*United States v. Cox,* 342 F.2d 167, 189–90 (5th Cir.) (Wisdom, J., concurring specially), *cert. denied sub nom. Cox v. Haubert,* 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965).

Nevertheless, it is unreasonable to assume that the grand jury will refuse to indict in most cases where there is a clear violation of law. Presumably this will occur only when prosecution without mercy would result in a miscarriage of justice. *Charge of John Raymond Fletcher, Associate Judge, to a Grand Jury,* 18 F.R.D. at 214.

**3.** Even in the limited number of cases where there is probable cause and the grand jury refuses to indict, expungement of an arrest record would seem appropriate. If the grand jury found that prosecution without mercy would result in a miscarriage of justice, there would appear to be good reason not to expunge an arrest record and thereby ensure that no harm will result from the Government's misguided actions.

legitimate law enforcement purpose in the maintenance of arrest records, *See Menard v. Mitchell,* 430 F.2d 486, 491–92 (D.C.Cir. 1970), there can be no doubt that no such interest exists where, as here, the individual arrested is no longer being investigated for the commission of a crime.

The Court is not only convinced that the Government does not have a law enforcement interest in the maintenance of the plaintiff's arrest record, but it also concludes that the Government's generalized interest in maintaining a system of records would not be defeated by the precedent set by ordering expunction in this case. In the vast majority of cases a grand jury will return a true bill. But even where it does not, expunction will not create excessive practical administrative problems for the government. This case is distinguishable from *United States v. Seasholtz, supra,* where trial by jury had been commenced, and *United States v. Dooley, supra,* where the accused was acquitted by a jury, since the plaintiff's case never reached the trial stage. Without subsequent proceedings, expunction of the arrest record is a simple and brief matter. *See United States v. Bohr,* 406 F.Supp. 1218, 1219 (E.D.Wisc. 1976).

This case is in many ways similar to *United States v. Bohr, supra.* See also *United States v. Diamond, supra.* In that case the court ordered the expunction of the arrest record of an attorney on the grounds that the indictment against him had been dismissed, his arrest record was not needed for law enforcement purposes, he had a clean record for more than a decade following his arrest and the continued maintenance of his arrest record would be a source of embarrassment or misunderstanding to his professional detriment. *United States v. Bohr,* 406 F.Supp. at 1220. While it is true that in *Bohr* the Government did not oppose expunction, this fact was not critical to the court's expunction order. In view of the grand jury's refusal to return a true bill, this Court does not consider the Government's opposition to the present motion as providing a basis for concluding that his arrest record is needed in the interest of law enforcement. The facts of this case demonstrate that just the opposite is true.

In sum, the Court is convinced that this case presents the unusual or exceptional circumstances that justify the exercise of its equitable powers. The act giving rise to the plaintiff's arrest record was an innocent one. Just having turned 21, the plaintiff wanted to buy some beer. Angered by a liquor store owner's refusal to sell him the beer, the impetuousness of youth caused him to write an insulting letter to the liquor store owner. The letter appears to be the principal evidence on which he was arrested and charged with extortion. While the plaintiff did not bring a lawsuit for damages resulting from arrest without probable cause, the grand jury returned a no true bill. On the facts of this case, there is no reason to suspect that the grand jury was attempting to shield a guilty man. Rather, the facts suggest that just the opposite inference be drawn; that is, that the grand jury exercised its traditional function and decided there was no probable cause on which to base an indictment.

Now, close to fifteen years later, the plaintiff has requested this Court to expunge his arrest record because it stands in the way of his professional growth. The plaintiff is an accomplished economist. He has not been involved with the criminal justice system in any way since the folly of his youth. For this Court to insist under these circumstances that the government's general need in preserving arrest records outweighs the harm caused by maintaining the plaintiff's record would result in a grave injustice—the evils of bureaucracy and inflexibility would triumph over the virtues of individuality and personal growth. In a fundamental way expungement in this case protects what Justice Brandeis termed the "right to be let alone—the most comprehensive of rights and right most valued by civilized men." *Olmstead v. United States,* 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928).

In accordance with the reasoning of this opinion, the Court orders that

1) the plaintiff's record, fingerprints and any other information relating to his arrest on January 19, 1968 be expunged from the files of the Federal Bureau of Investigation.

2) the plaintiff may from the date of this opinion and order forward answer in the negative to any inquiry regarding whether he has ever been arrested.