UNITED STATES of America, Appellee,

v.

Zalmon SCHNITZER, Appellant.

No. 201, Docket 77–1267.

United States Court of Appeals,
Second Circuit.

Argued Oct. 17, 1977.

Decided Nov. 30, 1977.

---

Diane R. Eisner, Asst. U. S. Atty., for the Eastern District of New York, Brooklyn, N. Y. (David G. Trager, U. S. Atty., for the Eastern District of New York and Alvin A. Schall, Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for appellee.

Steven Lloyd Barrett, New York City (Martin Erdmann, The Legal Aid Society, Federal Defender Services Unit, New York City, of counsel), for appellant.

Before MOORE, FRIENDLY and TIMBERS, Circuit Judges.

MOORE, Circuit Judge:

This is an appeal from the denial of a motion to expunge the arrest record and to secure the return of fingerprints and photographs, after dismissal of an indictment against the appellant, Zalmon Schnitzer. Count One of the indictment charged Leonard Fortgang and Schnitzer with conspiring to defraud the Federal Insurance Administration by filing a false claim in violation of 18 U.S.C. § 286. Count Two charged only Fortgang with bribing a government official in connection with his claim, a violation of 18 U.S.C. § 201(b).

On August 10, 1976, Schnitzer surrendered to the Federal Bureau of Investigation. He was arraigned, pleaded not guilty, and released on a personal recognizance bond. Prior to his release, Schnitzer was fingerprinted and photographed by the United States Marshal.

On September 13, 1976 Fortgang pleaded guilty to Count Two of the indictment. The Government did not seek a superseding

indictment against Schnitzer, and instead referred the matter for civil prosecution.[1] Chief Judge Mishler entered an order of dismissal on January 7, 1977.

On February 10, 1977, Schnitzer filed a motion for expungement of his arrest record and for the return of all fingerprints and photographs taken upon his arrest. This motion was filed as part of the original criminal action, rather than as a separate civil action. In the accompanying affidavit, defense counsel requested that the order of expungement be directed to the Department of Justice and the Federal Bureau of Investigation. These two organizations were neither served with the motion nor named as respondents.

On March 9, 1977 Chief Judge Mishler denied appellant's motion, concluding that under the facts, "the interests of the government in effective law enforcement outweigh those of the defendant". (Appendix F at 6).

### I.

The appellant, who introduced the motion below, now contends that the District Court did not have jurisdiction to hear the case. Appellant argues that the District Court lacked jurisdiction because the motion for expungement did not satisfy the requirements for instituting a civil action. Relying principally on *United States v. Huss*, 520 F.2d 598 (2d Cir. 1975), the appellant claims that ancillary jurisdiction was improperly invoked. In *Huss*, after termination of the criminal proceedings eight months earlier, appellants moved to compel the Federal Bureau of Prisons to provide meals meeting the Orthodox Jewish dietary laws during their incarceration. The motion, which made no reference to the court's jurisdiction to consider the matter, was titled with the criminal caption and was served only on the United States Attorney. The District Court dismissed the claim on the merits. On appeal, this Court vacated the order and instructed the District Court to dismiss the motion without prejudice because a sentencing court does not have inherent power to control the place or conditions of confinement. "Except where specific statutory authority exists, the place and conditions of confinement are in the first instance, matters of executive rather than judicial branch authority." *Id.* at 602. Furthermore, the District Court did not have personal jurisdiction over the prison officials in Kentucky where appellants were incarcerated.[2]

■ Unlike *Huss*, the District Court had jurisdiction in the instant case. First, the United States Attorney can capably represent the interests of the Attorney General and the Federal Bureau of Investigation. Second, the District Court clearly had jurisdiction over the criminal portion of the action. A court, sitting in a criminal prosecution, has ancillary jurisdiction to issue protective orders regarding dissemination of arrest records. *Morrow v. District of Columbia*, 135 U.S.App.D.C. 160, 172–173, 417 F.2d 728, 740–41 (1969). The fact that this action was not brought as a civil action does not affect the court's jurisdiction. If this case had been brought as a civil action, it would have been assigned to the same judge as a matter related to the criminal action and would have been treated as ancillary to the criminal action. *See United States v. Dooley*, 364 F.Supp. 75 (E.D.Pa. 1973). Other courts have entertained similar motions in criminal cases without discussion of the jurisdictional bases for the action. *See United States v. Linn*, 513 F.2d 925 (10th Cir.), *cert. denied*, 423 U.S. 836, 96 S.Ct. 63, 46 L.Ed.2d 55 (1975); *United States v. Rosen*, 343 F.Supp. 804 (S.D.N.Y. 1972); *United States v. Seasholtz*, 376 F.Supp. 1288 (N.D.Okl.1974). The application of ancillary jurisdiction in this case is proper and falls within the policy of encouraging judicial economy.

---

1. At the date of oral argument, no civil action had been instituted.

2. Although the alleged bases for jurisdiction failed in *Huss*, the court noted that it was "[m]indful of the statutory provision that '[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts', 28 U.S.C. § 1653 . . . ." 520 F.2d at 602.

## II.

■ The appellant argues that the arrest record should be expunged and all photographs and fingerprints should be returned. The Attorney General is required by 28 U.S.C. § 534(a)[3] to acquire and retain criminal identification records. No federal statute provides for the expungement of an arrest record.[4] Instead, expungement lies within the equitable discretion of the court, and relief usually is granted only in "extreme circumstances". *United States v. Rosen*, 343 F.Supp. 804, 807 (S.D.N.Y.1972). In determining whether such circumstances exist, courts have considered the "delicate balancing of the equities between the right of privacy of the individual and the right of law enforcement officials to perform their necessary duties". *Id.* at 806.

Retaining and preserving arrest records serves the important function of promoting effective law enforcement. Such records help to meet the "compelling public need for an effective and workable criminal identification procedure". *United States v. Seasholtz*, 376 F.Supp. 1288, 1290 (N.D.Okl. 1974). Congress has explicitly recognized this need for the acquisition, preservation, and exchange of identification records in 28 U.S.C. § 534(a).

The government's need to maintain arrest records must be balanced against the harm that the maintenance of arrest records can cause citizens.[5] The deleterious effect of arrest records on citizens has been well documented elsewhere. *See, e. g., Menard v. Mitchell*, 139 U.S.App.D.C. 113, 430

F.2d 486 (1970); *Sullivan v. Murphy*, 156 U.S.App.D.C. 28, 478 F.2d 938 (1973); *Morrow v. District of Columbia*, 135 U.S.App. D.C. 160, 417 F.2d 728 (1969); *Bilick v. Dudley*, 356 F.Supp. 945, 951 (S.D.N.Y. 1973); *Kowall v. United States*, 53 F.R.D. 211, 215 (W.D.Mich.1971); Comment, *The FBI's Right to Retain and Disseminate Arrest Records of Persons Not Convicted of a Crime May Be Limited by the First and Fifth Amendment*, 46 N. Dame Law. 825, 829–31 (1971). It is sufficient to say here that an arrest record alone can create serious adverse consequences for those who have been arrested in the past, notwithstanding the ultimate disposition of the case. As the court in *Menard* stated:

> "Even if no direct economic loss is involved, the injury to an individual's reputation may be substantial. Economic losses themselves may be both direct and serious. Opportunities for schooling, employment, or professional licenses may be restricted or nonexistent as a consequence of the mere fact of an arrest, even if followed by acquittal or complete exoneration of the charges involved." *Menard v. Mitchell, supra*, 139 U.S.App. D.C. at 117, 430 F.2d at 490. (Footnotes omitted).

■ In considering these equities, courts must be cognizant that the power to expunge "is a narrow one, and should not be routinely used whenever a criminal prosecution ends in an acquittal, but should be reserved for the unusual or extreme case".

---

**3.** 28 U.S.C. § 534(a) provides:

(a) The Attorney General shall—

(1) acquire, collect, classify, and preserve identification, criminal identification, crime, and other records; and

(2) exchange these records with, and for the official use of, authorized officials of the Federal Government, the States, cities, and penal and other institutions.

**4.** New York State recently has enacted legislation which provides for the return of photographs and fingerprints to finally exonerated accuseds. New York C.P.L. § 160.50 (McKinney Supp.1976). An exception is made in cases where the district attorney "demonstrates to the satisfaction of the court that the interests of justice requires otherwise." *Id.* at 160.50(1).

**5.** The maintenance of arrest records may infringe on an individual's privacy. However, mere retention of an arrest record has been held not to violate any constitutional right of privacy. *Herschel v. Dyra*, 365 F.2d 17, 20 (7th Cir.), *cert. denied*, 385 U.S. 973, 87 S.Ct. 513, 17 L.Ed.2d 436 (1966). Similarly, in *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the Supreme Court held that no cause of action for violation of a right of liberty or property protected by the due process clause of the Fourteenth Amendment arose out of the dissemination of a folder in which the plaintiff was identified as a known shoplifter, even though the charges against him had been dropped.

*United States v. Linn*, 513 F.2d 925, 927 (10th Cir.), *cert. denied*, 423 U.S. 836, 96 S.Ct. 63, 46 L.Ed.2d 55 (1975). Such extreme circumstances have been found and records ordered to be expunged where procedures of mass arrests rendered judicial determination of probable cause impossible, *Sullivan v. Murphy*, 156 U.S.App.D.C. 28, 478 F.2d 938 (1973); where the court determined the sole purpose of the arrests was to harass civil rights workers, *United States v. McLeod*, 385 F.2d 734 (5th Cir. 1976); where the police misused the police records to the detriment of the defendant, *Wheeler v. Goodman*, 306 F.Supp. 58 (W.D.N.C. 1969); or where the arrest was proper but was based on a statute later declared unconstitutional, *Kowall v. United States*, 53 F.R.D. 211 (W.D.Mich.1971).

■ Any particular request for expungement must be examined individually on its merits to determine the proper balancing of the equities.[6] Schnitzer's arrest and indictment were both legal, as was the law under which he was charged. The dismissal of the indictment did not concede the innocence of Schnitzer. The indictment constitutes a finding of probable cause by the grand jurors; the dismissal means only that the prosecutor did not believe he could establish Schnitzer's guilt beyond a reasonable doubt. Schnitzer does not claim that his arrest records have been released or that potential misuse of the records is imminent. While courts need not wait for substantial damage to occur before taking remedial equitable action, there is no evidence that harsh damage will indeed accrue. Schnitzer only alleges that retention of the record would create a poignant problem for him because of his status as a rabbinical student. In short, Schnitzer may be asked to explain the circumstances surrounding his arrest. However, his situation is not harsh or unique. Such an explanation may be expected from those about to enter a profession, such as a religious or legal profession. The harm, if any, which may result

does not fall within the narrow bounds of the class of cases where expungement has been declared appropriate.

Accordingly, the denial of the motion is affirmed.

---

6. The harm to the individual in any particular case may well be greater than the government's need to maintain that particular arrest record. However, the general need of the government for a system of records must add considerable weight to the government side of the balance, in addition to the probable importance of the particular records in question.