**UNITED STATES of America, Plaintiff,**

v.

**Richard L. SHERMAN, Defendant.**

**No. 79 Cr. 103 (CHT).**

United States District Court,
S.D. New York.

Dec. 23, 1991.

---

Otto B. Obermaier, U.S. Atty., S.D.N.Y., New York City (Jonathan D. Schwartz, of counsel), for plaintiff.

Eric J. Weiss, P.C., Clifton, N.J. (Eric J. Weiss, of counsel), for defendant.

## OPINION

TENNEY, District Judge.

Defendant Richard L. Sherman has moved to have his record of conviction and all records relating to that conviction expunged. For the reasons set forth below, the motion is denied.

## BACKGROUND

In February 1979, Sherman pleaded guilty to one felony count of medicaid fraud and one felony count of income tax evasion. In May 1979, the court sentenced Sherman to a term of imprisonment of two years for each count, with the terms to run concurrently. However, execution of sentence was suspended and Sherman was placed on probation for a period of three years, with the special condition that he perform community service. Judgment and Probation/Commitment Order of May 1, 1979, Judge Charles H. Tenney.

As a result of his guilty plea, Sherman's license to practice chiropractic medicine in the state of New York was suspended for three years. In addition, Sherman was put on probation for a period of two years in the state of Florida, where he currently resides. Affidavit of Richard L. Sherman (sworn to July 2, 1991) ("Aff. I") at 1.

Sherman's return to the field of chiropracty has apparently been quite successful. Sherman states that he has held virtually every office in the Broward County Chiropractic Society, which according to him is the nation's largest local chiropractic society for any individual state, and was elected President in 1985 and 1991. Aff. I at 2. In 1986, Sherman was selected as "Chiropractor of the Year" by his Florida peers. Aff. I at 2. In addition, Sherman states that he has been chairman of the "Ethics Committee" for the past six years, although he does not specify to what organization this ethics committee belongs. Aff. I at 2.

Sherman argues that his criminal records should be expunged because the records will inhibit his admittance to various professional organizations. Aff. I at 3. In support of his argument, Sherman cites several applications to institutes and professional groups which inquire as to whether the applicant has ever been convicted of a crime or suspended from practice. Aff. I at 3; Aff. I, Ex. B; Affidavit of Richard L. Sherman (sworn to August 15, 1991) ("Aff. II"), Exs. unmarked. However, Sherman has not actually been refused membership in any professional organization because of his criminal records, and he has not completed any applications which would require him to disclose his criminal record. Aff. I at 3. Sherman also argues that because he sometimes testifies in multiple personal injury and workman's compensation cases, he "live[s] in fear that [his] record of conviction will be divulged in court and discredit [his] reputation with the attorneys, judges and juries." Aff. I at 3.

In addition, Sherman asserts that he has been asked to consider running for a state political office, but was forced to abstain for fear that adverse publicity would be generated if his criminal record were disclosed. Aff. I at 3. In sum, Sherman requests an expunction because he has been "economically and emotionally deprived of leading a normal life with this prior offense remaining of record." Aff. I at 4.

## DISCUSSION

Because the retention of criminal records is essential for an effective criminal identification system, the courts that have recognized the inherent judicial power to expunge criminal records [1] have exercised that power only in "extreme circumstances." *See, e.g., United States v. Sweeney*, 914 F.2d 1260, 1264 (9th Cir.1990); *United States v. Noonan*, 906 F.2d 952, 956 (3d Cir.1990); *United States v. Friesen*, 853 F.2d 816, 817–18 (10th Cir.1988); *Allen v. Webster*, 742 F.2d 153, 155 (4th Cir.1984); *United States v. Schnitzer*, 567 F.2d 536, 539 (2d Cir.1977), *cert. denied*, 435 U.S. 907, 98 S.Ct. 1456, 55 L.Ed.2d 499 (1978). Congress recognized the "compelling public need" to retain criminal records when it authorized the Department of Justice to acquire and preserve criminal records and to exchange those records with federal, state, and local law enforcement authorities. *Schnitzer*, 567 F.2d at 539; *see* 28 U.S.C. § 534(a). In so doing, Congress mandated "a central location for information to make identification of persons responsible for crimes, the deceased, and missing persons." *Sweeney*, 914 F.2d at 1264.

In the face of the public's compelling need to have an accurate criminal identification system, courts have rarely granted motions to expunge arrest records, let alone conviction records. This is true even where the arrests at issue resulted in acquittals or even dismissal of the charges. In *Schnitzer*, the Second Circuit explained that the power to expunge "'is a narrow one, and should not be routinely used whenever a criminal prosecution ends in an acquittal, but should be reserved for the unusual or extreme case.'" *Schnitzer*, 567 F.2d at 539 (quoting *United States v. Linn*, 513 F.2d 925, 927 (10th Cir.), *cert. denied*, 423 U.S. 836, 96 S.Ct. 63, 46 L.Ed.2d 55 (1975)). Such extreme circumstances have been found and records ordered to be expunged where procedures of mass arrests rendered judicial determination of probable cause impossible, where the court determined the sole purpose of the arrests was to harass civil rights workers, where the police misused the police records to the detriment of the defendant, and where the arrest was proper but was based on a statute later declared unconstitutional. *Id.* at 540 (citations omitted).

Thus, the Second Circuit in *Schnitzer* refused to order a defendant's arrest record expunged even though the indictment charging the defendant with defrauding a federal agency was ultimately dismissed. The court emphasized that Schnitzer's arrest, subsequent indictment, and the law under which he was indicted were all valid, and that the dismissal of the charges did not necessarily establish his innocence. The court further noted that there had been no allegation that the Government had misused, or would misuse, the defendant's criminal record. The court recognized that retention of his arrest record would create a "poignant problem" for the defendant "because of his status as a rabbinical student," and because he could "be asked to explain the circumstances surrounding his arrest." *Id.* at 540. Yet, the court refused to order the relief sought because Schnitzer's situation was not "harsh or unique," since "[s]uch an explanation may be expected from those about to enter a profession, such as a religious or legal profession." *Id.*

Here, Sherman has failed to challenge the legality or validity of his conviction, let

---

1. It has been suggested by the United States Attorney that the court does not have jurisdiction to expunge the criminal records held by the Executive Branch. *See* Letter Brief, dated August 7, 1991, at 4–5; *see also Scruggs v. United States*, 929 F.2d 305 (7th Cir.1991). Because the defendant's motion is denied, however, the court need not decide this issue.

alone the legality or validity of his arrest or the information to which he pleaded guilty. Neither party to this case has succeeded in uncovering any case in which a record of conviction has been expunged where the circumstances of the conviction have not been challenged. *See Noonan,* 906 F.2d at 957 (despite Presidential pardon, court refused to expunge record of conviction of Military Selective Service Act violation where "no challenge to the conviction itself is made"). Sherman has not argued or presented any evidence that the government has misused or would misuse his criminal record.

■ Sherman argues that even if no exceptional circumstances are present in this case, the court should use its equitable powers to grant his motion, as the court of appeals did in *Chastain v. Kelley,* 510 F.2d 1232 (D.C.Cir.1975). The records at issue in *Chastain,* however, pertained to a cancelled suspension and proposed dismissal of an FBI agent rather than to a felony conviction of a criminal defendant. Furthermore, the court stated only that a right not to be adversely affected by such information in the future *"may* exist if the information (1) is inaccurate, (2) was acquired by fatally flawed procedure, or (3) ... is prejudicial without serving any proper purpose of the Bureau's." *Id.* at 1236 (emphasis added). Here, however, Sherman has not argued that the records pertaining to his conviction are inaccurate or were acquired by flawed procedures. Furthermore, although Sherman's conviction records are certainly prejudicial, the court cannot conclude that they do not serve any proper purpose.[2]

Sherman also relies on *Menard v. Saxbe,* 498 F.2d 1017 (D.C.Cir.1974), and *Diamond v. United States,* 649 F.2d 496 (7th Cir. 1981), even though these cases concerned circumstances markedly different from those presented by the instant motion. *Menard* involved the expunction of an arrest record held by the FBI after the bureau was informed that the police encounter was not an arrest but a mere detention. *Diamond,* while advocating a case by case approach to motions to expunge criminal records, did so in the context of a request to expunge the record of an indictment that was dismissed *sua sponte* by the government. The court in *Diamond* took pains to distinguish that case from another where the defendant sought expunction after a full trial and acquittal rather than after the government halted its prosecution. *Diamond,* 649 F.2d at 498.

■ Sherman also indicates that *United States v. Van Wagner,* 746 F.Supp. 619 (E.D.Va.1990), might be pertinent to the court's inquiry. The court in *Van Wagner,* however, found expunction of an arrest record to be an appropriate exercise of its equitable powers where the government not only dropped all charges against the defendant, but concluded that he was innocent. *Van Wagner,* 746 F.Supp. at 620. Unlike the instant motion, where the government can point to very good reasons for maintaining Sherman's criminal records, there was no legitimate public interest in maintaining a record of Van Wagner's arrest since all parties involved conceded his innocence. *Id.* at 621. Van Wagner also submitted evidence of how his arrest record had caused real and permanent economic damage, i.e., the inability to secure bank loans and city government contracts for his business as a result of his arrest record. *Id.* As noted by the court in *Van Wagner:*

the compelling unfairness justifying expunction here is that a wholly innocent individual, mistakenly arrested and indicted, but supposedly presumed innocent of all charges, is nonetheless suffer-

---

2. Defendant also directs the court to *Farinaro v. Coughlin,* 642 F.Supp. 276 (S.D.N.Y.1986) for the proposition that a "prisoner has a limited constitutional right to have information expunged from his record." Memorandum of Law on Behalf of Defendant at 3. *Farinaro,* however, clearly holds that a "prisoner has a limited constitutional right to have *incorrect* information expunged from his record" because such information might be relied on for decisions about parole or good time credits. *Id.* at 281 (emphasis added). *Farinaro,* therefore, is inapposite to the defendant's motion since he is not seeking to have any inaccurate information expunged from his record.

ing adverse consequences no different from those he would have endured had he in fact been charged, arrested and convicted of a crime. These facts distinguish this case from those cases where expunction was denied to defendants who were convicted and then pardoned or where the defendant is ultimately not prosecuted or convicted, but the government refuses to concede her or his innocence.... Expunction in such cases, as the Fifth Circuit noted, would give the "defendant more relief than if he had been acquitted."

*Id.* at 622 (quoting *Rogers v. Slaughter,* 469 F.2d 1084, 1085 (5th Cir.1972)). Thus, none of the cases cited by Sherman supports the proposition that a court should use its equitable powers to expunge the criminal records of a defendant who has pled guilty, been convicted, and who has not challenged the circumstances or fact of that conviction.

In addition, Sherman has not submitted any evidence to support his contention that his conviction has restricted or will restrict his future career advancement in the chiropractic profession. By his own admission, Sherman has had a very successful career in his chosen field of work. *See* Aff. I at 2. The only evidence that Sherman submitted in support of his claim that his career is being restricted are applications from various chiropractic societies and associations which inquire whether and, if so, why an applicant has ever been convicted of a crime or had his license suspended. Aff. I, Ex. B; Aff. II, Exs. unmarked. Sherman has not presented any evidence to support his contention that if he were to fill out these applications, he would be denied the positions he desires. He merely states his conclusion that this would be the case.[3] Sherman also asserts that he cannot run for public office because of the adverse publicity that might be generated if his conviction were disclosed. Sherman, however, has not explained why his previous

criminal record is not relevant to his potential constituents' consideration of him as their representative.

While the court recognizes that having a criminal record affects the path that Sherman's life will take, it disagrees with his contention that this should not be the case. On the contrary, criminal records serve a dual punitive and deterrent purpose. While the courts cannot totally prevent crime by firm and fair handling of criminal cases, it is hoped that the enduring stigma and handicap of having a criminal record will prevent others from engaging in similar conduct.

### CONCLUSION

For the reasons stated above, Sherman's motion to expunge his criminal records is denied.

So ordered.

---

**3.** Defendant has submitted numerous testimonials from friends and colleagues attesting to his good character, skill in his profession, and leadership qualities, as evidence that his record should be expunged. Defendant has not, however, presented any evidence that the organizations which he wishes to join would not permit him to do so, especially were they to have access to the character references he has provided to the court.