**In re Kerwin FARKAS.**

**No. Misc. 91–459.**

United States District Court, E.D. New York.

Feb. 10, 1992.

Frank Paone, Brooklyn, N.Y., for petitioner.

Karen A. Popp, Asst. U.S. Atty., Brooklyn, N.Y., for respondent.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

Petitioner Kerwin Farkas seeks an order expunging all records of a prior arrest. For the reasons set forth below, his application is denied.

The arrest in question, which took place nearly two decades ago, arose out of an investigation conducted by the Bureau of Narcotics and Dangerous Drugs (BNDD), the predecessor of the present-day Drug Enforcement Administration. According to BNDD records, Farkas first came to the attention of federal authorities on October 2, 1972. On that date, two confidential informants notified BNDD agents that Farkas was dealing illegally in large amounts of methamphetamine, a controlled substance. The informants further stated that Farkas claimed he could provide five pounds of methamphetamine for the price of $21,500.

Acting on this information, an undercover BNDD agent accompanied the informants to a location in Freeport, New York, where they met with Farkas and his associate Richard Damato and discussed the purchase of "speed" (methamphetamine). Farkas furnished a small sample vial, and the BNDD agent conducted a "burn test" to preliminarily confirm the presence of methamphetamine; when the test produced a positive result, the agent and Farkas agreed to a transaction involving five pounds of "speed".

The agent then accompanied Farkas, Damato, and the informants to a Brooklyn apartment, where they were met by another man, Joseph Levy. The agent observed a quantity of what appeared to be methamphetamine, a sample of which again produced a positive field test. Farkas and Levy then placed the "speed" on a scale Farkas had set up in the room, and confirmed that the amount was in excess of five pounds. The agent and Farkas subsequently left the building to discuss arrangements for final payment; on the agent's signal, other BNDD agents moved in, arrested Farkas, Damato, and Levy, and seized the suspected narcotics.

On October 3, 1972, a BNDD agent swore out a complaint charging the three men with possession with intent to distribute five pounds of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1). On October 19, however, laboratory test results on the contents of the sample vial and on the five pounds of "speed" revealed that both consisted of ephedrine, a non-controlled substance. The Office of the United States Attorney declined to continue the prosecution thereafter, and the complaint was dismissed by order of the magistrate on October 20.

■ It is well established that federal courts may, through the exercise of their inherent powers, order the expunction of arrest records. See *United States v. Noonan*, 906 F.2d 952, 956 (3d Cir.1990); *United States v. G*, 774 F.2d 1392, 1394 (9th Cir.1985); *United States v. Schnitzer*, 567 F.2d 536, 539 (2d Cir.1977), *cert. denied*, 435 U.S. 907, 98 S.Ct. 1456, 55 L.Ed.2d 499 (1978). However, relief is not to be given freely, but should instead be granted "only in 'extreme circumstances'". *Schnitzer*, 567 F.2d at 539 (quoting *United States v. Rosen*, 343 F.Supp. 804, 807 (S.D.N.Y. 1972)).

■ Courts have found special circumstances to exist in a variety of cases. Generally speaking, expunction is appropriate where some impropriety attends the government's actions, such as where mass arrests are made without probable cause, where the arrest is made solely for the purpose of harassment, or where the arrest takes place pursuant to an unconstitutional statute. See *Noonan*, 906 F.2d at 957 (citing numerous cases); *Schnitzer*, 567 F.2d at 540 (same). Nevertheless, expunction should not be granted routinely after an acquittal or the dismissal of charges, but should be reserved strictly for extreme cases of government misconduct. *See*

*Schnitzer,* 567 F.2d at 539–40; *Rowlett v. Fairfax,* 446 F.Supp. 186, 188–89 (W.D.Mo. 1978).

■ Farkas argues unpersuasively that his case falls into one of the special categories above, alleging conclusorily that his fourth amendment rights were violated by a search in the absence of probable cause. In fact, given the records before it, this court can only conclude that the BNDD's actions were both prudent and constitutionally permissible. Acting on tips from known informants, the BNDD agents planned a standard "buy and bust" operation; on meeting the agents, Farkas and his associates specifically promised to furnish "speed", and produced a sample which tested positive for methamphetamine; and ultimately Farkas and the others produced over five pounds of what they claimed was "speed", which again tested positive. Under these facts, it is impossible to fathom the assertion that the BNDD agents lacked probable cause to believe that a federal offense was being committed.

Farkas asks this court to consider the possible effect of his arrest record on his current employment as vice-president of a prestigious securities firm. (Indeed, it appears that the present application was prompted by a National Association of Securities Dealers (NASD) inquiry into his past.) While this court bears in mind the Second Circuit's command to consider "the harm that the maintenance of arrest records can cause citizens," 567 F.2d at 539, it also observes that other language in *Schnitzer* is equally apt here:

> In short, Schnitzer may be asked to explain the circumstances surrounding his arrest. However, his situation is not harsh or unique. *Such an explanation may be expected from those about to enter a profession,* such as a religious or legal profession. The harm, if any, which may result does not fall within the narrow bounds of the class of cases where expungement has been declared appropriate.

567 F.2d at 540 (emphasis supplied).

This court should not substitute its own judgment for that of the NASD, or for that of the state bar examiners, the pharmacist licensing board, or any other body charged with maintaining the standards of a vocation. It is they who must evaluate the character and qualifications of potential and present members of their respective professions, in each case applying their own particular criteria to the facts before them. It might well be judicious of those bodies to look on a 20–year–old arrest record with charity and forgiveness, especially where the arrestee has since led an exemplary life; nevertheless, this court declines to usurp the wise exercise of their discretion by removing such records entirely from view.

Accordingly, the application for an order of expunction is denied.

SO ORDERED.