UNITED STATES of America, Plaintiff,

v.

Ayman S. RABADI, Defendant.

No. 84 Cr. 1034 (JES).

United States District Court,
S.D. New York.

June 22, 1995.

**758**

Mary Jo White, U.S. Atty., S.D.N.Y., New York City (John M. McEnany, Asst. U.S. Atty., of counsel), for plaintiff.

Irving Anolik, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Defendant Ayman S. Rabadi seeks an order to expunge his criminal record in the above-captioned matter and to return any fingerprints and photographs related thereto. For the reasons that follow, the application is denied.

### BACKGROUND

The facts underlying the instant criminal action, which will be summarized briefly, are the subject of an extensive opinion by the Second Circuit. *See United States v. Nersesian*, 824 F.2d 1294 (2d Cir.), *cert. denied*, 484 U.S. 958, 108 S.Ct. 357, 98 L.Ed.2d 382 (1987), *cert. denied*, 484 U.S. 1061, 108 S.Ct. 1018, 98 L.Ed.2d 983 (1988).

Between mid–1982 and 1984, a group of individuals operated a large-scale conspiracy to import heroin from the Middle East and a conspiracy to distribute it in the United States, mainly in the New York metropolitan area. *See Nersesian*, 824 F.2d at 1300–01. In December 1984, following a lengthy investigation by the Drug Enforcement Administration and the New York State Police, Magistrate Judge Ruth Washington issued warrants for the arrest of approximately thirty-six individuals, including defendant Ayman S. Rabadi. On March 15, 1985, the Government filed a superseding indictment charging Rabadi and thirty-five co-defendants with violations of the narcotics laws and various offenses. *See Nersesian*, 824 F.2d at 1300.

On February 6, 1986, a jury convicted Rabadi of conspiracy to distribute heroin, in violation of 21 U.S.C. §§ 841, 846, and conspiracy to import heroin, in violation of 21 U.S.C. §§ 952, 955, 960, 963. *See Nersesian*, 824 F.2d at 1300. On May 12, 1986, the Court sentenced Rabadi to concurrent five year terms of imprisonment on each count and $100 in special assessments. On June 29, 1987, the Second Circuit affirmed Rabadi's conviction, and the United States Supreme Court denied certiorari on two occasions thereafter. *See United States v. Nersesian*, 824 F.2d 1294 (2d Cir.), *cert. denied*, 484 U.S. 958, 108 S.Ct. 357, 98 L.Ed.2d 382

(1987), *cert. denied,* 484 U.S. 1061, 108 S.Ct. 1018, 98 L.Ed.2d 983 (1988).

In December 1993, Rabadi filed a motion *coram nobis* to vacate his conviction.[1] On December 9, 1994, the Court issued an order dismissing all counts against Rabadi. On March 3, 1995, Rabadi filed the instant motion to expunge his criminal record. By letter dated March 27, 1995, the Government opposed that application.

## DISCUSSION

■ Pursuant to 28 U.S.C. § 534(a), the Attorney General of the United States is required to acquire, retain and disseminate criminal records. Moreover, under the governing regulations enacted in relation thereto, the Attorney General may make such records available "for use in connection with licensing or local/state employment...." 28 C.F.R. § 20.33. The acquisition, preservation and dissemination of criminal records fulfills the compelling public need for an effective criminal identification procedure, thereby promoting effective law enforcement. *See United States v. Sherman,* 782 F.Supp. 866, 868 (S.D.N.Y.1991); *Natwig v. Webster,* 562 F.Supp. 225, 229 (D.R.I.1983); *United States v. Seasholtz,* 376 F.Supp. 1288, 1290 (N.D.Okla.1974).

■ Despite this statutory scheme, it is well-established that federal courts may, through the exercise of their inherent equitable powers, order the expungement of criminal records. *See In re Farkas,* 783 F.Supp. 102, 103 (E.D.N.Y.1992). In determining whether to order expungement, a court must balance "the equities between the right of privacy of the individual and the right of law enforcement officials to perform their necessary duties." *United States v. Rosen,* 343 F.Supp. 804, 806 (S.D.N.Y.1972). Despite this balancing of interests, the various circuit courts have recognized that the equitable power to expunge is a narrow power, appropriately used only in extreme circumstances. *See, e.g., United States v. Smith,* 940 F.2d 395, 396 (9th Cir.1991); *United States v. Noonan,* 906 F.2d 952, 957 (3rd Cir.1990);

*Geary v. United States,* 901 F.2d 679, 679–80 (8th Cir.1990); *United States v. Friesen,* 853 F.2d 816, 817 (10th Cir.1988); *Allen v. Webster,* 742 F.2d 153, 155 (4th Cir.1984); *Menard v. Saxbe,* 498 F.2d 1017, 1021 (D.C.Cir. 1974).

The leading case in the Second Circuit is *United States v. Schnitzer,* 567 F.2d 536 (2d Cir.1977). In *Schnitzer,* as in this case, the defendant sought the expungement of his arrest record and the return of fingerprints and photographs following the dismissal of an indictment. *Id.* at 537. Like the other circuit courts, the Second Circuit recognized "that the power to expunge 'is a narrow one, and should not be routinely used whenever a criminal prosecution ends in an acquittal, but should be reserved for the *unusual or extreme case.'*" *Id.* at 539–40 (quoting *United States v. Linn,* 513 F.2d 925, 927 (10th Cir.), *cert. denied,* 423 U.S. 836, 96 S.Ct. 63, 46 L.Ed.2d 55 (1975)) (emphasis added). The court advised that extreme circumstances may exist

> where procedures of mass arrests rendered judicial determination of probable cause impossible, *Sullivan v. Murphy,* 478 F.2d 938, 968–69 (D.C.Cir.), *cert. denied,* 414 U.S. 880, 94 S.Ct. 162, 38 L.Ed.2d 125 (1973); where the court determined the sole purpose of the arrests was to harass civil rights workers, *United States v. McLeod,* 385 F.2d 734 (5th Cir.1967); where the police misused the police records to the detriment of the defendant, *Wheeler v. Goodman,* 306 F.Supp. 58 (W.D.N.C.1969); or where the arrest was proper but was based on a statute later declared unconstitutional, *Kowall v. United States,* 53 F.R.D. 211 (W.D.Mich.1971).

*Id.* at 540; *see also United States v. Benlizar,* 459 F.Supp. 614, 622–23 (D.D.C.1978) (involving entrapment). In the end, the court held that the mere dismissal of the indictment, which constituted a finding of probable cause by a grand jury, did not fall within the narrow class of cases where ex-

---

1. In this case, a witness apparently misidentified Rabadi during the underlying criminal prosecution. As a result, the Government did not file an objection to the motion *coram nobis* to vacate the conviction.

pungement is appropriate. *Schnitzer,* 567 F.2d at 540.

■ In this case, the Court is presented with none of the recognized circumstances supporting expungement. There is no suggestion that Rabadi's arrest lacked probable cause or resulted from entrapment. There is also no suggestion that the government arrested Rabadi for improper purposes or misused his criminal records thereafter. Nor was Rabadi's conviction based upon a constitutionally invalid statute. For that matter, there is no claim that Rabadi's criminal record is in any respect inaccurate.[2] Moreover, the government did not concede his innocence in dismissing the indictment. *See Schnitzer,* 567 F.2d at 540; *see also United States v. Linn,* 513 F.2d 925, 927–28 (10th Cir.) (acquittal itself does not constitute extraordinary circumstances), *cert. denied,* 423 U.S. 836, 96 S.Ct. 63, 46 L.Ed.2d 55 (1975).

Finally, the pertinent criminal record represents valuable law enforcement information, and Rabadi has failed to demonstrate the adverse consequences from preservation thereof.[3] It follows that the application must be denied.

### CONCLUSION

For the reasons set forth above, the instant application for an order of expungement shall be and hereby is denied.

It is **SO ORDERED.**

---

**2.** In its opposition letter, the Government indicated that it will forward any necessary information to the Drug Enforcement Administration and the Federal Bureau of Investigation to supplement their records.

**3.** In February 1995, Rabadi filed a Notice of Intention to File Claim with the New York State Court of Claims concerning the underlying arrest and criminal prosecution in this case. These post-trial matters illustrate the need to maintain, rather than expunge, accurate records of complex criminal proceedings.