**UNITED STATES of America**

v.

**Leroy FIELDS, Defendant.**

**No. 91 Cr. 448 (MGC).**

United States District Court,
S.D. New York.

March 10, 1997.

Mary Jo White, U.S. Attorney for the S.D. of New York by Jennifer M. Moore, Assistant U.S. Attorney, New York City, for U.S.

Frank Handelman, New York City, for Defendant.

## MEMORANDUM OPINION AND ORDER

CEDARBAUM, District Judge.

On April 2, 1992, Leroy Fields was sentenced to a two-year term of probation following his plea of guilty to a misdemeanor charge of possession of cocaine under 21 U.S.C. § 844(a). Fields now moves to expunge all references to his arrest and conviction from the records of this Court and from the records of all federal government agencies. For the reasons discussed below, the motion is denied.

Fields argues that he has successfully completed the conditions of his probation and has

reintegrated himself into his family and into society, but that his criminal record is preventing him from obtaining a steady job. He lives with his wife and three children. At the time of his offense, Fields had been an employee of the United States Postal Service for ten years; he lost that job upon his conviction. Since that time, Fields has held a number of part-time jobs but has left each one because he was not scheduled for enough hours to earn a subsistence salary. While working as a part-time school bus driver, he attempted to secure a job as a bus driver for Greyhound but was informed that Greyhound would not hire him as long as he had a criminal record. He was later hired by New York Bus Service but lost that position near the end of a four-week training period when his employer learned of his conviction. Fields argues that the record of his offense is preventing him from securing a steady job that will allow him to support his family.

■ The Second Circuit has held that expunction of an arrest record "lies within the equitable discretion of the court," but that such relief is granted only in "extreme circumstances." *United States v. Schnitzer*, 567 F.2d 536, 539 (2d Cir.1977), *cert. denied*, 435 U.S. 907, 98 S.Ct. 1456, 55 L.Ed.2d 499 (1978). In determining whether such circumstances exist, courts must consider the "delicate balancing of the equities between the right of privacy of the individual and the right of law enforcement officials to perform their necessary duties." *Id.* at 539 (quoting *United States v. Rosen*, 343 F.Supp. 804, 806 (S.D.N.Y.1972)). That is, the government's interest in maintaining arrest records "must be balanced against the harm that the maintenance of arrest records can cause citizens." *Id.* But the power to expunge is a narrow one, and even when a defendant is acquitted, it "should not be routinely used ..., but should be reserved for the unusual or extreme case." *Id.* (quoting *United States v. Linn*, 513 F.2d 925, 927 (10th Cir.1975), *cert. denied*, 423 U.S. 836, 96 S.Ct. 63, 46 L.Ed.2d 55 (1975)). The court in *Schnitzer* set forth four examples of instances in which the requisite "extreme circumstances" had been found to exist and records were ordered expunged: (1) where procedures of mass arrests rendered judicial determination of

probable cause impossible; (2) where the sole purpose of the arrests was to harass civil rights workers; (3) where the police misused police records to the detriment of the defendant; and (4) where the arrest was proper but was based on a statute later declared unconstitutional. *Id.* at 540.

■ In *Schnitzer* itself, the Second Circuit affirmed a denial of a motion to expunge an arrest record in a case where the indictment had been dismissed. There, the defendant was faced with the "poignant problem" that as a rabbinical student, he might be asked to explain the circumstances surrounding his arrest. The Second Circuit held that "[the defendant's] situation is not harsh or unique. Such an explanation may be expected from those about to enter a profession, such as a religious or legal profession. The harm, if any, which may result does not fall within the narrow bounds of the class of cases where expunction has been declared appropriate." Id. Similarly, the difficulties faced by Fields in finding and keeping a steady job do not rise to the level of "extreme circumstances" required before a court will exercise its inherent power to expunge.

Furthermore, this is not a case where a defendant has been acquitted or an indictment dismissed. Here, Fields does not challenge the validity of his conviction. The equities in favor of expunction here are thus even fewer than in a case like *Schnitzer*. Fields does not cite any case in which a court has granted a motion to expunge records of a valid conviction. In *United States v. Sherman*, 782 F.Supp. 866 (S.D.N.Y.1991), a defendant sought to have the records of his conviction for Medicaid fraud and income tax evasion expunged so that he would not be refused membership in various professional organizations. There, the court noted that none of the cases cited by the defendant involved expunction of the criminal records of a defendant who had pled guilty, been convicted, and not challenged the conviction. The court went on to state that "[w]hile the court recognizes that having a criminal record affects the path that Sherman's life will take, it disagrees with his contention that this should not be the case." *Id.* at 870. *See*

also *United States v. Bryde,* 914 F.Supp. 38 (N.D.N.Y.1996) (court refused to expunge 20–year–old arrest and conviction records involving relatively minor charges where defendant argued that records would disqualify her from becoming registered nurse).

 Fields argues that entrapment can also constitute an "extreme circumstance" justifying a court's use of its power to expunge. *See, e.g., United States v. Rabadi,* 889 F.Supp. 757, 760 (S.D.N.Y.1995). Fields admits that his case "may not rise to the level of entrapment" but argues that the behavior of the Postal Service in his case was "patently unfair." According to Fields, he was a drug addict while employed with the Postal Service. The Postal Service, at his request, enrolled him in a drug rehabilitation program which he successfully completed. Upon his return to work, the Postal Service began a "crackdown" on drug use among its employees. A co-worker involved in the sting operation repeatedly targeted Fields because of his past drug addiction. Although Fields at first refused to purchase drugs for his co-worker, he finally submitted to the request. Later, he was remorseful and declined to continue purchasing drugs. After this, his drug addiction resurfaced. Fields points out that his Presentence Report shows a long history of physical and sexual abuse, a personality disorder, and reduced mental capacity, all of which cause him to lack the capacity to think rationally under stressful conditions. This often leads Fields to accede to the demands of others even if he believes them to be incorrect.

While the actions of the Post Service may not have been admirable, Fields himself concedes that they did not rise to the level of entrapment because the co-worker placed only "minimal pressure" on him. Furthermore, the case that Fields argues is most closely analogous to his own situation, *United States v. Benlizar,* 459 F.Supp. 614 (D.D.C. 1978), is clearly distinguishable. First, in *Benlizar* the court expunged records of a conviction that had been overturned, not records of a valid conviction. Additionally, the court in *Benlizar* emphasized the "extreme violations by the government of the defendant's rights," *id.* at 615, including a DEA agent's destruction of notes crucial to the defendant's entrapment defense, which led to the case being "irreparably prejudiced," *id.* at 618. Furthermore, the defendant faced an "extraordinary degree of harm," *id.* at 615, not only because of his possible difficulty in finding a job, but because as a resident alien, he might face difficulty in becoming a citizen or in leaving the country and later returning. Finally, the defendant in *Benlizar* was sentenced under the Youth Corrections Act, 18 U.S.C. § 5005 *et seq.* (repealed). That statute would have made the defendant eligible to have his conviction expunged if the conviction were valid, and thus it would be anomalous not to expunge the records of his unconstitutional conviction. *Id.* at 624. Thus, the facts of the *Benlizar* case constitute much more "extreme circumstances" than are present in Fields' case.

For the foregoing reasons, Fields' motion to expunge all records of his arrest and conviction is denied.

SO ORDERED.