**UNITED STATES of America,
Plaintiff,**

v.

**Harry L. WILEY, III, Defendant.**

**No. CR–3–91–90.**

United States District Court,
S.D. Ohio,
Western Division.

Aug. 6, 1999.

James A. Wilson, U.S. Attorney's Office, Dayton, OH, for plaintiff.

Terry W. Posey, Huber Heights, OH, for defendant.

DECISION AND ENTRY OVERRUL-ING DEFENDANT'S APPLICATION FOR COURT TO EXPUNGE RECORDS OF CRIMINAL CONVICTION (DOC. # 14).

RICE, Chief Judge.

This matter comes before the Court upon the Defendant's Application for Expungement (Doc. # 14) of his 1992 conviction, following a guilty plea, on a charge of mail fraud and aiding and abetting in violation of 18 U.S.C. § 1341 and § 1342.

The conduct underlying the Defendant's conviction occurred in April, 1989, when he stole checks from a sealed box while working as a security guard at the Dayton Power & Light Company building in Dayton, Ohio. Using the stolen checks, the Defendant purchased merchandise from various mail-order businesses. In his Application, the Defendant contends that he committed this offense while suffering from severe depression, which was caused by his failure to graduate from the Dayton Police Academy. (Doc. # 14 at 2). Following the Defendant's 1992 guilty plea, the Court imposed a sentence of five years' probation, with four months of home confinement. (Doc. # 12). He subsequently

received an early release from his probation on November 13, 1995.

According to the Defendant, he volunteered as a firefighter and paramedic at the Bethel Township, Miami County Fire Department, while serving his term of probation. (Doc. # 14 at 2). The Defendant notes that he continues to perform volunteer work with the Fire Department, where he now holds the rank of lieutenant. (*Id.* at 3). The Defendant's Application reflects that he has received various awards and commendations for his volunteer work. The Defendant also contends that he has been certified as a fire inspector, that he supervises a local explorer program, that he conducts various public relations programs, and that he is responsible for the Fire Department's recruitment and training. (*Id.*).

In his Application, the Defendant notes that he presently works full-time for Eaton Medical Transport, a private ambulance service, a job which purportedly provides a relatively low salary and no benefits. (*Id.*). Furthermore, the Defendant contends that he has recently married, and that he must spend approximately $5,000 a year to provide medical insurance for his wife and her young daughter, whom he intends to adopt. (*Id.*). Despite his education, training, and community involvement, the Defendant asserts that he is unable to obtain a full-time job with good pay and benefits. He states that his felony conviction has precluded him from receiving consideration for various jobs, including positions with the Union Township, Butler County Fire Department, and the City of Springdale Fire Department. (*Id.* at 3–4). When he reported his 1992 conviction, both employers purportedly declined to consider the Defendant for employment. (*Id.* at 4). Consequently, he seeks an Order expunging his conviction.

In *United States v. Doe,* 556 F.2d 391, 393 (6th Cir.1977), the court recognized that "[i]t is within the inherent equitable powers of a federal court to order the expungement of a record in an appropriate case." More recently, in *United States v.*

*Robinson,* 79 F.3d 1149, 1996 WL 107129 (6th Cir.1996), the court elaborated on the circumstances under which federal courts may order expungement. In relevant part, the court explained:

> [T]his court has not yet posited a standard for determining which cases are "appropriate." Other circuits recognizing an equitable power to expunge have generally held that the decision to exercise such power hinges on a balancing of "the government's need to maintain extensive records to aid in effective law enforcement against the harm to the individual of maintaining these records...." *See, e.g., United States v. Bagley,* 899 F.2d 707, 708 (8th Cir.), *cert. denied,* 498 U.S. 938, 111 S.Ct. 343, 112 L.Ed.2d 307 (1990). Acknowledging the strength of the government's interest in this context, however, these circuits have held that the expungement power is narrow and appropriately used only in extreme circumstances. *United States v. Smith,* 940 F.2d 395, 396 (9th Cir.1991); *United States v. Friesen,* 853 F.2d 816, 817 (10th Cir.1988); *Allen v. Webster,* 742 F.2d 153, 155 (4th Cir.1984); *United States v. Schnitzer,* 567 F.2d 536, 539 (2nd Cir.1977), *cert. denied,* 435 U.S. 907, 98 S.Ct. 1456, 55 L.Ed.2d 499 (1978); *Menard v. Saxbe,* 498 F.2d 1017, 1021 (D.C.Cir.1974).

*Id.* at *1.

Applying the foregoing standards, the *Robinson* court recognized that "federal courts have most readily invoked the expungement power with respect to illegal convictions, convictions under statutes later deemed unconstitutional, and convictions obtained through governmental misconduct." *Id.* at *2. On the other hand, "courts have *uniformly denied* expunction requests regarding valid convictions." (Emphasis added) *Id.,* citing *United States v. Smith,* 1988 WL 19174, 841 F.2d 1127 (6th Cir. March 8, 1988) (affirming denial of expunction of valid conviction for which petitioner subsequently received a pardon); *United States v. Janik,* 10 F.3d 470,

472 (7th Cir.1993) (rejecting petitioner's application for expungement, even though conviction had been reversed on speedy trial grounds, and despite claim that records of indictment and conviction would prevent promotion in the Army and interfere with ability to obtain civilian employment); *United States v. Scott,* 793 F.2d 117, 118 (5th Cir.1986) (concluding that the trial court lacked the power to expunge a valid conviction, even though the petitioner's criminal record interfered with ability to pursue career as a securities dealer); *Schnitzer,* 567 F.2d at 539–540 (denying expungement request made by a rabbinical student, notwithstanding claim that arrest and indictment record would interfere with career, because the arrest, indictment, and statute under which the petitioner was charged were valid); *Schwab v. Gallas,* 724 F.Supp. 509, 510, 511 (N.D.Ohio 1989) (denying expungement of valid felony conviction, even though petitioner had completed his sentence and had led a law-abiding life). Although the foregoing cases "may not establish a *per se* rule against expunging valid convictions," according to the Sixth Circuit, "they illustrate that petitioners must put forth much more compelling and extraordinary circumstances than those relied upon" by the petitioner in *Robinson.*[1] *Id.*

██ Based upon the Sixth Circuit's rulings in *Doe* and *Robinson,* as well as analogous case law from other jurisdictions, the Court finds the Defendant's Application for Expungement unpersuasive. As noted above, such requests routinely are rejected when a petitioner seeks to expunge a *valid* conviction. *Cf. Scott,* 793 F.2d at 118 (concluding that a court cannot order expungement when "the validity of the original conviction is unchallenged").[2] In such cases, petitioners may suffer adverse consequences as a result of their

convictions, but the consequences are the natural and predictable result of engaging in unlawful conduct. *See, e.g., Smith,* 940 F.2d at 396 ("The harms alleged by Smith and noted by the district court, including disbarment and a possible prohibition against reenlistment, are not unusual or unwarranted. Instead, they are the natural and intended collateral consequences of having been convicted. Were we to deem them sufficient to outweigh the government's interest in maintaining criminal records, expunction would no longer be the narrow, extraordinary remedy, but a generally available remedy."); *United States v. Pinto,* 1 F.3d 1069, 1070 (10th Cir.1993) ("We have stated that, in extreme circumstances, an arrest record may be expunged after the dismissal of the charges or acquittal.... However, there is a large difference between expunging the arrest record of a presumably innocent person, and expunging the conviction of a person adjudged as guilty in a court of law.... On this record, however, there is no allegation that the conviction was in any way improper. The sole contention is that Defendant has been punished enough, and that the presence of the conviction is unjustly interfering with her efforts to rebuild her life. Accordingly, we hold that the trial court was without power to expunge this conviction.").

██ Although the Defendant's criminal record may result in financial hardship and impede his ability to obtain gainful employment, expungement typically is not appropriate unless *unwarranted* adverse consequences outweigh the public interest in maintaining criminal records. *Janik,* 10 F.3d at 472; *Doe v. Webster,* 606 F.2d 1226, 1231 (D.C.Cir.1979) (recognizing that expungement is appropriate when "unusually substantial harm to the defendant[,]

---

1. The petitioner in *Robinson* had asserted that her conviction "prevented her from obtaining comparable employment" following her discharge from Ameritech in corporate "downsizing." *Robinson,* 1996 WL 107129, at *1.

2. The Court cites *Scott* merely to demonstrate the judiciary's aversion toward expunging valid convictions. The Sixth Circuit has not yet adopted a *per se* rule foreclosing the *possibility* of expunging a valid conviction (*see* Robinson, 1996 WL 107129 at *2), and this Decision should not be construed as doing so.

not in any way attributable to him, outweighs the government's need for a record of the arrest"); *Doe v. United States,* 964 F.Supp. 1429, 1432 (S.D.Cal.1997) (observing that expungement may be ordered when a petitioner faces unusually substantial harm to his basic rights, including the right to obtain employment, *if* the harm is not in any way attributable to the petitioner).

■ In the present case, the validity of the Defendant's 1992 conviction has not been challenged, and the Court perceives no extraordinary circumstances justifying expungement. Although the Court is genuinely (and without reservation) sympathetic to this Defendant's plight, particularly in view of his having turned his life around and the alleged medical reasons behind his commission of the offense, his current hardship is a natural and predictable consequence of his legitimate felony conviction. As such, the Court has difficulty concluding that the Defendant's hardship outweighs the government's long-recognized interest in maintaining complete criminal records. The preservation of such records helps to promote effective law enforcement. Such records also help to meet the "compelling public need for an effective and workable criminal identification procedure." *Schnitzer,* 567 F.2d at 539; *United States v. Johnson,* 714 F.Supp. 522, 524 (S.D.Fla.1989).[3] In short, the present record is devoid of the extraordinary or extreme circumstances that other courts have found sufficient to justify expungement. Indeed, if the Defendant's harm justified expungement, most individuals convicted of felonies would be entitled to the same remedy. Only in extraordinary cases will a felony conviction *not* limit prospective employment opportunities.

■ In opposition to the foregoing reasoning, the Defendant first seeks to garner support for his position from Ohio Revised Code § 2953.32, which permits the expungement of state convictions under limited circumstances. The statute is inapplicable in the present case, however, because the Defendant was convicted of a federal offense. *Schwab,* 724 F.Supp. at 510. The Defendant next reasons that the "primary issue" is not whether his conviction was valid. Rather, he contends that the critical issue is whether the harm he has suffered outweighs the government's need to safeguard its criminal records. As the Court has explained, however, the validity of his 1992 conviction *is* a significant issue, because the legitimacy of that conviction factors into the "weighing" equation.

The Defendant also argues that the case law cited by the government, and relied upon by the Court, is distinguishable because those cases did not involve the deprivation of a petitioner's liberty interest. Unlike the petitioners in the foregoing cases, the Defendant alleges that the government's maintenance of his criminal record constitutes a deprivation of his protected liberty interest in pursuing his chosen profession. Additionally, the Defendant stresses his presentation of evidence indicating that he has been denied specific employment opportunities.

The Court finds these distinctions unpersuasive for several reasons. *First,* in several of the cases mentioned above, the petitioners unsuccessfully argued that

---

**3.** In reaching this conclusion, the Court recognizes that "[t]he harm to the individual in any particular case may well be greater than the government's need to maintain that particular arrest record. However, the general need of the government for a system of records must add considerable weight to the government side of the balance, in addition to the probable importance of the particular records in question." *Schnitzer,* 567 F.2d at 540 n. 6. Moreover, the government's "weighty interests" in maintaining complete criminal records are presumed, and a petitioner must present sufficient evidence to overcome those interests. *Sealed Appellant v. Sealed Appellee,* 130 F.3d 695, 702 (5th Cir.1997). The Court notes, too, that Congress has recognized the federal government's significant interest in maintaining law enforcement records. *See* 28 U.S.C. § 534(a) (mandating that the Attorney General "acquire, collect, classify, and preserve" all records pertaining to a crime).

their criminal records foreclosed or impaired their pursuit of various career opportunities. Although those petitioners did not allege the deprivation of a liberty interest by name, they raised the same substantive argument that the Defendant now advances, namely interference with the pursuit of their chosen professions. *See, e.g., Friesen,* 853 F.2d at 816 (holding that expungement constituted an abuse of discretion, even though an acquitted attorney alleged harm "in terms of employment availability, reputation in the community, and possible denial of professional licensing"); *Scott,* 793 F.2d at 118 (expungement order vacated, even though petitioner argued that conviction interfered with career as a securities dealer); *Janik,* 10 F.3d at 472–473 (expungement denied despite petitioner's claim that arrest record would preclude military promotions and government employment). *Second,* to the extent that the Defendant's job options are limited, any limitation is the direct and predictable result of his own illegal activity, and not any improper conduct by the government. *Third,* contrary to the Defendant's assertion, some of the foregoing cases did involve petitioners who alleged that their criminal records foreclosed specific job opportunities. *See, e.g., Pinto,* 1 F.3d at 1070–1071 (expungement improper despite claim that conviction prevented defendant from working at her daughter's liquor store); *Smith,* 940 F.2d at 396 (expungement unwarranted despite claim that conviction prevented petitioner from re-enlisting in the military).[4]

Finally, the Defendant cites *United States v. Stromick,* 710 F.Supp. 613 (D.Md. 1989), and *Schwab,* 724 F.Supp. at 511, in support of his Application for Expungement. In *Stromick,* the court recognized that a petitioner whose conviction had been *set aside* might be entitled to expungement if he could demonstrate the denial of "specific job opportunities." *Stromick,* 710 F.Supp. at 614. Subsequently, in *Schwab,* the court cited *Stromick* for the proposition that the denial of employment opportunities may warrant expungement. As the government properly notes, however, the *Schwab* court's reliance upon *Stromick* appears to be misplaced, because the conviction at issue in *Schwab* had not been set aside. *See United States v. Gillock,* 771 F.Supp. 904, 908 (W.D.Tenn.1991) (recognizing the distinction between *Stromick* and *Schwab,* and also noting that "the examples [of potential grounds for expungement] stated in *Stromick* are theoretical examples of situations that were never applied").[5] For these reasons, the Court finds the Defendant's reliance upon *Stromick* and *Schwab* unpersuasive.

Based upon the foregoing analysis, the Court declines the Defendant's invitation to invoke its equitable power and to expunge his 1992 conviction for mail fraud and aiding and abetting, in violation of 18 U.S.C. § 1341 and § 1342. Accordingly, the Defendant's Application for Expungement (Doc. # 14) is OVERRULED.

---

4. In *Smith,* the Ninth Circuit noted the absence of evidence demonstrating that the petitioner's conviction actually had precluded his re-enlistment in the military. *Smith,* 940 F.2d at 396 n. 1. Nevertheless, for purposes of its analysis, the court presumed that the conviction had precluded the petitioner's re-enlistment.

5. Parenthetically, the Court notes that in *Robinson,* 1996 WL 107129 at *2, the Sixth Circuit cited *Schwab* as one of a number of cases illustrating that "courts have uniformly denied expunction requests regarding valid convictions."